(126 So. 49)

No. 30352.

STATE v. KELLY.

Jan. 6, 1930.

William J. O'Hara, of New Orleans, for appellant.

Percy Saint, Atty. Gen., E. R. Schowalter, Asst. Atty. Gen., and Eugene Stanley, Dist. Atty., and J. Bernard Cocke, Asst. Dist. Atty., both of New Orleans, for the State.

OVERTON, J. Defendant was indicted, together with William Woolfarth and Willie Dupont, upon the charge of murdering James Saik. At the close of the evidence, the state abandoned the charge against Woolfarth and Dupont, prosecuting it thereafter only against defendant. Defendant was found guilty of manslaughter and appeals from the sentence imposed.

The record presents two bills of exception. The first one was taken to the refusal of the trial judge to permit defendant, on the cross-examination of the witness, Dimitry Saik, to propound certain questions to him, the purpose of which was to affect his credibility as a witness. Saik was a son of the deceased, and was an important witness for the state, being one of three eyewitnesses to the homicide. The witness was only 14 years of age. The defendant attempted to show by the witness how many times he had been arrested. The question, seeking to elicit this information, was objected to, and the objection was sustained, on the ground that, according to the Juvenile Court Act (Act No.

126 of 1921 [Ex. Sess.]) evidence of that nature could not be used against a child. After the reservation of a bill to the ruling, and some remarks and inquiries concerning it, the trial judge, in response to a question propounded by one of the counsel in the case, restated his ruling by saying that defendant could not inquire into any charge pending, or which may be pending, against the witness in the Juvenile Court, and, in response to a question touching convictions, the trial judge ruled that these could not be shown from the juvenile records.

Had the witness been permitted to answer the questions before the jury, it appears, from the proceedings had out of their presence, that he would have testified that he was not arrested and charged in the juvenile court with petty larceny, and it would have appeared from the juvenile court records, had they been received in evidence, that he had been charged with petty larceny, and also with being an incorrigible child.

The Juvenile Court Act for the parish of Orleans provides that: "No charges or affidavits made, evidence given or judgment rendered against any child in said court [meaning the Juvenile Court] shall be at any time thereafter admissible against said child in any other proceedings in any other court of the State." Section 6, Act No. 126, of 1921 (Ex. Sess.) p. 321.

The effect of this provision of the Juvenile Court Act for the parish of Orleans is to prohibit the use of any proceedings had against any child—that is to say, against any person, 17 years of age or under, had in the juvenile court for that parish, or any inquiry concerning such proceedings, for the purpose of using them against such child, in any court, except the juvenile court, and this, whether the child has passed the juvenile age or not

since such proceedings were had. It is equally within the ban of the provision to use such proceedings, or the facts elicited by such inquiry, against the one proceeded against as a juvenile, in any other court than the juvenile court, whether they be used against him as a defendant or other party litigant, or as merely a witness, to discredit him, in a case by and against another.

The reason underlying this provision of the Juvenile Court Act for the parish of Orleans is that offenses, excepting capital crimes, committed by juveniles, are not regarded by the law, creating the court, as crimes, but merely as delinquencies of children, which it is the duty of the state to correct, after due proceedings had, by placing the child under proper influences and by subjecting him to proper correction. State v. Dabon, 162 La. 1075, 111 So. 461.

The law intends that the proceedings had, or pending against the child, shall not be permitted to be used to brand him as one with a criminal record. To permit them to be so used would be to fly into the very teeth of the purpose of the Juvenile Court Act, which is to correct delinquencies in children, and place them in position to be made law abiding citizens.

■ There is nothing in section 8 of Act No. 285 of 1926, relative to the Louisiana Training Institute, which makes admissible the evidence that was here sought to be elicited. That section makes the fact that one has been sentenced to the institute, or has been an inmate thereof, inadmissible in any of the courts of the state "in any proceedings affecting such person." It is urged that the proceeding does not affect the juvenile, where he is merely a witness in the case, and that the effect of it is to limit the scope of section 6 of the act of 1921, if it require such limita-

tion, to proceedings to which the juvenile is a party litigant.

It would be difficult to understand why the lawmaker inserted such a provision in the law, as that contained in section 8 of the act of 1926, if defendant's contention be correct. Little or no occasion ever presents itself, calling for the offering of such evidence, except to affect the credibility of one as a witness in some proceeding, who has been sentenced to the Louisiana Training Institute. It would be strange, indeed, if the law made the proceedings had in the juvenile court, or the sentence to the Louisiana Training Institute, inadmissible against the once juvenile offender, whenever thereafter he took the witness stand in a case to which he was a party litigant, but permitted them to be admitted, to affect his credibility, in all cases in which he was not a party litigant. This, indeed, would be arbitrary legislation.

Section 8 of the act of 1926, in our opinion, contemplates that an inquiry, to show one's record as a juvenile offender, to affect his credibility as a witness, whether he be a party to the litigation or not, is a "proceeding affecting such person."

■ Article 495 of the Code of Criminal Procedure does not repeal section 6 of the act of 1921, or in any manner affect the question here presented. These laws relate to different subject-matters, and therefore are not inconsistent with one another. Article 495 is relative to the admissibility of evidence, touching the arrest, indictment, and conviction of one, not a juvenile, for crime, who is called as a witness in a case, the evidence being offered to affect his credibility, whereas section 6 is relative to the admissibility of proceedings had against a juvenile, in the juvenile court. Both laws may stand together.

The ruling made, touching this bill, does not prevent an accused, or party litigant, from showing that a juvenile witness is unworthy of belief, or is of doubtful veracity. Its only effect is to hold that this cannot be done by the juvenile court records or by an inquiry concerning them. It may, for instance, be shown by witnesses, familiar with the fact, that a juvenile's reputation for truth and veracity, in the community in which he lives, is bad.

■ The remaining bill of exception was taken to the overruling of a motion for a new trial. The only matter presented by the bill that comes within the jurisdiction of this court, not already considered, is the fifth ground urged for a new trial. The motion, in setting forth that ground alleges that, at the close of the evidence, immediately before the arguments began, the state abandoned the case against William Woolfarth and Willie Dupont, who were on trial, under the same indictment, with the present defendant; that the jury did not return a verdict acquitting Woolfarth and Dupont until they returned one against defendant; that consequently defendant was deprived of their evidence, as he had no right to call them to the stand, since they were on trial with him; that a new trial should now be granted him to the end that he may avail himself of their evidence, and that, if a new trial is granted him, Dupont will testify that he killed the deceased.

On the trial of the motion Dupont testified that he shot the deceased in self-defense, and that defendant, due to the fact that he was wounded, was unable to shoot.

While article 461 of the Code of Criminal Procedure makes an accused a competent witness only when he requests to be made one,

and while it appears that Dupont did not take the witness stand on the trial of the case, we think that the court did not err in overruling the motion for a new trial. The fact that Woolfarth and Dupont were acquitted did not give the present defendant, of and by itself, the right to a new trial, so that he could avail himself of their evidence. At best, the right to a new trial upon that ground addressed itself to the discretion of the court. The trial judge says that he does not believe Dupont's evidence, taken on the trial of the motion, and that he thinks the evidence fully sustains the verdict. We are not prepared to say that the trial judge is in error in disbelieving Dupont. Dupont has quite a criminal record behind him. He has been convicted of grand larceny, and at the time of the trial of this case there was pending against him a charge of robbery. Other charges against him might be mentioned. As to Woolfarth, he was a fugitive from justice at the time this motion was tried. There was no error in overruling the motion.

For these reasons the verdict and the sentence appealed from are affirmed.

O'NIELL, C. J., absent.