183 So. 897

## CROW v. STATE.

### 6 Div. 997.

Court of Appeals of Alabama.
May 25, 1937.

Rehearing Denied June 29, 1937.

Reversed after Remandment June 30, 1938.

Rehearing Stricken Oct. 4, 1938.

320

Clarence Mullins, Harvey T. Deramus, and W. Emmett Perry, all of Birmingham, for appellant.

A. A. Carmichael, Atty. Gen., and Wm. H. Loeb, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

From a judgment of conviction for forgery this appeal was taken.

The indictment contained two counts, but count 1 was eliminated by the court upon motion of defendant, hence the conviction was under count 2, which reads as follows:

"2nd. The Grand Jury of said county further charge that, before the finding of this indictment, W. W. Crow, whose Christian name is to the Grand Jury otherwise unknown, with intent to injure or defraud, did falsely make, alter, forge or counterfeit an instrument in writing, in words and figures substantially as follows:

"The State of Alabama �months Circuit Court
Jefferson County. ⎫ Circuit Court

"Before the undersigned authority, personally appeared A. R. Mays, who being duly sworn, according to law, says he was a witness in the case of Ben Gordon, Plaintiff, and W. C. McCarty, Defendant, #26997, and that he claimed certificate of attendance, numbered ...... for $5.20.

"He further says that said certificate has been lost or misplaced, and that said certificate has not been sold or transferred by him to any person.

"A. R. Mays

"Sworn to and subscribed before me, this 25 day of July, 1932.

"F. B. ...... P. G. 15

"Flossie M. Dorman, N. P.

or, with intent to injure or defraud, did utter and publish, as true, the said falsely made, altered, forged, or counterfeited instrument in writing, knowing the same to be so made, altered, forged, or counterfeited, against the peace and dignity of the State of Alabama."

The defendant interposed demurrers to the second count of the indictment, based upon numerous grounds, but the principal insistences were to the effect that the instrument set forth in the indictment does not of itself have any legal capacity to defraud and does not have any apparent legal efficacy and no extrinsic facts are averred in the indictment which show capacity to defraud or apparent legal efficacy. This question was presented in every possible manner in numerous grounds of demurrer, some of which were as follows:

"7. That the instrument which defendant is charged with having forged is merely an affidavit, which, of itself, has no capacity to defraud and has no apparent legal efficacy.

"8. That the said instrument set out therein which the defendant is charged with having forged is merely an innocuous statement of facts, and as such could not be the basis of a prosecution for forgery.

"9. That the instrument set out therein, which the defendant is alleged to have forged, does not on its face have capacity to injure or defraud so as to be the subject of forgery, and no extrinsic facts are averred in the indictment which would render the said instrument such that it would have the capacity to injure or defraud so as to be the subject of forgery.

"11. That the paper set out in the indictment is not one by which a pecuniary demand or obligation purports to be created and the false making of which, with intent to defraud, is forgery.

"12. That the indictment, while setting out the alleged forged instrument, does not set out any writing by which, on its face, any person could be injured or defrauded, and no extrinsic facts are averred showing such intent to injure or defraud.

"14. For aught that appears therefrom, the said A. R. Mays had no legal claim for attendance fees as a witness in the case described in the said instrument set out in the indictment.

"20. No extrinsic facts are alleged in addition to the alleged forged instrument showing that the said A. R. Mays would have been entitled or might have obtained said witness fees, or any part thereof had the said instrument in writing been actually executed by the said A. R. Mays.

"22. For that it is not alleged in the indictment that any witness certificate was ever issued to the said A. R. Mays.

"40. For that the instrument alleged to be forged creates no legal liability against any person whatever, and is not a bill, note, check, certificate, or other evidence of debt, and the meaning of the instrument cannot be ascertained from the words and figures thereof.

"41. For that the written instrument, if genuine, gave only the true maker the right to receive the money or witness fees set out in the same.

"42. For that no transfer or assignment of the written instrument to this defendant is alleged.

"43. For aught that appears, the written instrument alleged to have been forged could not have been used by this defendant unless it was transferred or assigned to him, and no facts are averred showing such a transfer or assignment.

"44. For that it would have been impossible for this defendant to defraud anyone or to deprive anyone of any legal right unless and until the written instrument alleged to have been forged was transferred or assigned to this defendant.

"45. For that the written instrument alleged to have been forged is not negotiable.

"46. For aught that appears, the witness fees or the amount thereof set out in the written instrument set up in the indictment was paid to the clerk of the circuit court more than six years prior to the making or presentment of said written instrument.

"55. For that no extrinsic facts are averred in said indictment showing wherein or how this defendant could have defrauded or injured any person by using or uttering the instrument referred to in the indictment.

"66. For aught that appears from the allegations of said indictment, the said A. R. Mays, the person whose name it is alleged was forged, was never the owner of or held any title to a certificate of attendance in the case of Ben Gordon, plaintiff, and W. C. McCarty, defendant.

"67. For that the instrument alleged to have been forged or uttered shows on its face that the person whose name was signed to the same was the only person entitled to receive the witness fee set out in said written instrument.

"68. For that no facts are alleged in said indictment showing wherein the written instrument referred to therein had sufficient legal efficacy to work injury upon any person."

There were other and further grounds of demurrer of similar import with different phraseology.

■■■ The question as to whether a written instrument alleged to be forged would create a legal liability is one of law and was therefore properly addressed for the judicial determination of the trial court, and it has been definitely settled by numerous decisions of the appellate courts of this State, in construing the forgery statute, it is not every written instrument that may be the subject of forgery, and before there can be any forgery the instrument alleged to be forged must be such as, either upon its face, or by reason of attendant circumstances, appears to have the capacity to injure or defraud. In other words, it must be such an instrument which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability.

■■■ In the instant case, as appears above, the indictment contained no extrinsic facts. Count 2 of the indictment simply sets out the affidavit or certificate, stating that A. R. Mays was a witness in a certain case, claimed his attendance, has lost or misplaced his certificate, and it has not been transferred. The instrument itself possesses no legal validity and is not capable of effecting a fraud. Therefore it needs no extended discussion to decide and hold that the demurrers to the indictment were well taken and should have been sustained. The action of the court in overruling the demurrers was error to a reversal. The following authorities are conclusive on this point. Aders v. State, 21 Ala.App. 41, 104 So. 882; in said case the court held that where the indictment was in Code form and sets out the instrument forged or uttered which is relied upon for conviction and which shows upon its face

that it is dated on Sunday, is not sufficient because of the fact that it is necessary for extrinsic facts to be averred to show that the instrument is capable of injuring or defrauding any one.

In Burnett v. State, 18 Ala.App. 388, 92 So. 521, 522, this court held as follows: "It is clear that the writing, '8-24 1920. Please pay Jim Lee Burnett for 8 1/4 at 2.75 per day. time in full. discharged R. L. Duncan,' may be the subject of forgery, under certain circumstances extrinsic to the paper itself, but we are equally clear that such extrinsic facts and circumstances are not set out in the indictment, as make it free from vice, and that on this account the demurrers should have been sustained."

In Williams v. State, 90 Ala. 649, 8 So. 825, 826, the Supreme Court held the indictment insufficient where it contained a waiver of a landlord's lien signed by one party, directed to another. The court very aptly stated as follows:

"Certain writings—a promissory note, or bill of exchange, for illustration—import on their face the creation of a pecuniary liability. So of many other written instruments, if they import legal validity,—that is, if the writing shows on its face, without reference to extrinsic facts, that, if genuine, it creates, discharges, increases, or diminishes a money liability, or transfers or incumbers property, or surrenders or impairs an existing valid claim to or lien on property,—then the false making of such written instrument, with intent to defraud, is, without more, forgery, and will justify a conviction of that grave offense. To fall within the rule, however, which dispenses with the averment of extrinsic facts, the writing itself must show that, if genuine, it affects some existing property right or legal liability; for otherwise it fails to show its false making or utterance could defraud any one. There must be both the intention and power to defraud, or the legal offense is not committed. This principle rests on the soundest reason and the highest authority. * * *

"The indictment in this case charges that Lewis, whose name it avers was forged, was the landlord of defendant, and as such had a lien on the crop grown on the rented premises for any advances he had made to Jackson, or might make to him The law creates the lien, if the relation of landlord and tenant existed, and if advances were made. * * * But unless advances were made there was no lien in fact, and a certificate that no claim or lien other than that for land and mule rent, though forged, could not injure or defraud any one, and legal forgery could not be predicated of it. To make the indictment sufficient, it should have averred that Lewis had made advances to Jackson,—such advances as the statute declares give him a lien. * * * The indictment is insufficient, and the demurrer to it should have been sustained."

Again, the Supreme Court, in Dixon v State, 81 Ala. 61, 1 So. 69, 71, stated the law to be: "If a writing is so incomplete in form as to leave an apparent uncertainty in law whether it is valid or not, a simple charge of forging it fraudulently, etc., does not show an offense; but the indictment must set out such extrinsic facts as will enable the court to say that, if it were genuine, it would be valid."

In Fomby v. State, 87 Ala. 36, 6 So. 271, the Supreme Court said as follows: "On its face * * * it does not purport to create a pecuniary liability on another, nor does it show that another might be injured by it. It is not apparent that, if genuine, it would operate as the basis of another person's liability. * * * No extrinsic facts are averred which show, or tend to show, its vicious capacity. * * * The demurrer to the indictment should have been sustained."

After the ruling of the court upon the demurrers, the case proceeded to trial pending which innumerable exceptions were reserved to the rulings of the court, and are here insisted upon as being reversible error. From what has been said there is no necessity to pass upon, discuss, or decide these questions. For the error indicated, the judgment of conviction from which this appeal was taken is reversed, and the cause remanded.

Reversed and remanded.

### After Remandment.

This cause was originally filed in this court on April 19, 1937. It was "submitted on briefs," April 22, 1937. On May 25, 1937, this court dealing with the question of demurrers to the indictment only, rendered an opinion reversing and remanding the case. On June 7, 1937, the State filed an application for rehearing which application was here overruled on June 29, 1937, whereupon the State immediately applied for a writ of certiorari, which the Supreme

Court granted 'on December 9, 1937. 183 So. 907.[1] Application for rehearing was made in that court which was finally overruled and the cause was remanded to this court for further consideration on April 21, 1938.

Under the provisions of section 7318 of the Code 1923, the decisions of the Supreme Court govern the holdings and decisions of this court, and that court having held that the demurrer to the indictment was not well taken is conclusive of that particular, and sole question. There are numerous other points of decision and insistences of error to be considered, for, as stated, the former decisions in this case dealt with demurrers to the indictment, and none other.

The indictment contained two counts, but upon motion of defendant the court required the State to elect which of the counts of the indictment it would proceed to prosecute under, and the State elected to prosecute under count two of the indictment.

Count two, aforesaid, is in words and figures as follows:

"2nd. The Grand Jury of said county further charge that, before the finding of this indictment, .W. W. Crow, whose Christian name is to the Grand Jury otherwise unknown, with intent to injure or defraud, did falsely make, alter, forge or counterfeit an instrument in writing, in words and figures substantially as follows:

" 'The State of Alabama, } Circuit Court.
Jefferson County. }

" 'Before the undersigned authority, personally appeared A. R. Mays, who being duly sworn, according to law, says he was a witness in the case of Ben Gordon, Plaintiff, and W. C. McCarty, Defendant, #26997, and that he claimed certificate of attendance, numbered ...... for $5.20.

" 'He further says that said certificate has been lost or misplaced, and that said certificate has not been sold or transferred by him to any person.

" 'A. R. Mays

" 'Sworn to and subscribed before me, this 25 day of July, 1932.

" 'F. B. ...... P. G. 15

" 'Flossie M. Dorman, N. P.'

"or, with intent to injure or defraud, did utter and publish, as true, the said falsely made, altered, forged, or counterfeited instrument in writing, knowing the same to be so made, altered, forged or counterfeited, against the peace and dignity of the State of Alabama."

To said count the defendant interposed his plea of "not guilty." This plea cast upon the State the burden of proving each and every material allegation contained in said count, to the satisfaction of the jury, beyond a reasonable doubt, and to a moral certainty.

A grand jury is under the sworn duty to "diligently inquire, and true presentment make," etc. Code 1923, Section . 8666. This duty extends to the ascertainment and presentment of every material fact necessary to constitute a good and valid indictment. Identification of the accused is one of the material facts to. be averred; this is usually done by giving his Christian and surname. But in cases where the grand jury do not know, and can not learn either some name, or other material fact to be averred, the name and fact, as the case may be, may be averred as to the grand jury unknown unless such fact is a material and essential ingredient of the offense without which no crime would be imputed. Section 4537, Code 1923, provides: "The indictment must be certain as to the person charged; but when his name is unknown to the grand jury, it may be so alleged without further identification." Section 4538, Code 1923, provides: "Any fact which is unknown to the grand jury, and which is not a material ingredient of the offense, may be so charged in the indictment."

It has been said, the foregoing rule is born of necessity, and when the necessity does not exist the rule does not apply. It is only when the name is unknown to the grand jury, the authority to employ that form of expression or charge is permitted. So, when the name is known to the grand jury at the time the indictment is found, the averment that it is unknown is not a true presentment; and if the fact of such knowledge is shown on the trial it is the' duty of the court not to allow a conviction to be had on that indictment. Jones v. State, 63 Ala. 27, 29, by Stone, J. In said opinion Mr. Justice Stone went on to say: "In Duvall and Pelham v. State, 63 Ala. 12, at this term, we had occasion to consider this question; and we there held, that the question is one of variance between the facts found by the grand jury, and the facts developed on the trial before the petit jury."

---

[1] 236 Ala. 26.

What has been said hereinabove pertains to the insistence of appellant that the averment in the indictment towit: "* * * whose Christian name is to the Grand Jury otherwise unknown," was not a "true presentment," by the Grand Jury, and therefore a manifest variance between the allegation and proof existed. The record discloses that the defendant made every possible effort to offer conclusive proof of this fact. It appears that several of the State witnesses who had known the defendant for many years were examined as witnesses before the Grand Jury and there testified in this case, and by these witnesses when being examined upon the trial in the court below the defendant sought to show by each of them that while giving evidence in this presentment before the Grand Jury that they did there testify that the name of the accused was William or Will Crow. In each instance, in this connection, the court sustained the State's objections to the numerous questions propounded to said witnesses seeking to prove said fact, and declined to permit defendant to offer proof tending to show, that as a matter of fact said testimony was adduced before the Grand Jury and that at the time the indictment in this case was preferred the Grand Jury did know the true Christian name of the accused, their averment to the contrary notwithstanding.

■ All authorities are clear to the conclusion that the defendant had the right to rebut or disprove the material allegation in the indictment, aforesaid, it being an issue in the case, and therefore it was error to a reversal when the court declined to permit him so to do. The numerous exceptions reserved to the court's rulings on this point are well taken and are sustained.

On the question above discussed we advert to other authorities directly in point as being conclusive.

In our case of Oliveri v. State, 13 Ala. App. 348, 69 So. 359, this court (speaking through Brown, J.) said (page 361): "This was a sufficient description of the defendant under our statute (Code, § 7142), and it was wholly immaterial what his true name was, unless the proof on the trial showed that the grand jury knew his true name at the time it returned the indictment. Under the indictment in this form it was an issue in the case as to whether the defendant's name was otherwise unknown to the grand jury than as charged in the indictment, with the burden of proof on the defendant on that issue."

The above holding, whether advisedly or not, placed the burden of proof on the defendant on that issue. Here, the appellant undertook in every possible manner to assume and carry out said burden, but, as stated, was denied the right to do so.

In Wells v. State, 88 Ala. 239, 7 So. 272, the Supreme Court of Alabama (speaking through Mr. Justice McClellan) said: "If, on the other hand, the language quoted be held the equivalent of an averment that the first name of the defendant was unknown to the grand jury, the result to the appellant is the same. He might have impeached the finding by disproof of the fact thus alleged; that is, it was open to him to show that his true name was known, and, showing which, the indictment would not have supported a conviction."

The court said, in Glenn v. State, 26 Ala. App. 264, 158 So. 198, 199: "In all criminal prosecutions, the name of the person charged must be properly stated. In other words, the process, indictment, or affidavit and warrant, upon which a person is put to trial in a criminal prosecution, must be certain as to the person charged; but where his name is unknown, it may be so alleged, and when it is so alleged, a plea in abatement will not be in point. If it should develop upon the trial that the allegation 'whose name is otherwise unknown' is untrue, and that the true name of the accused was known to the grand jury, in cases of indictment, or was known to the affiant upon whose affidavit the prosecution rested, a fatal variance would appear, and, if taken advantage of in a proper manner, a conviction on such process should not be allowed." See, also, Butler v. State, 17 Ala.App. 511, 85 So. 864; Hughes v. State, 22 Ala.App. 344, 115 So. 697; Axelrod v. State, 7 Ala.App. 61, 60 So. 959.

Earnest insistence of error is made, and innumerable exceptions reserved, to the action of the court in allowing the State to offer evidence of other and distinct offenses, than the offense charged against the appellant, and for which he was on trial in this case. Upon examination of the record we find a most unusual condition is presented. The record is voluminous, consisting of more than 300 pages, typewritten. Two or three of these pages were consumed in the trial upon the main question involved in this prosecution, i. e. the guilt or innocence of the defendant as charged in the 2nd. count of the indictment. More than eighty per cent of the remaining portion of the record (possibly 250

pages of the record), was taken up in transcribing the proceedings of the lower court in the effort to show that the defendant had committed other separate and distinct crimes from the one upon which he was on trial.

The law involved upon this proposition has been definitely settled and announced in numerous decisions of the appellate courts of this and other States.

In Jackson v. State, 229 Ala. 48, 155 So. 581, the court said (page 582): "Evidence of other and distinct criminal offenses, at other times and places, is admitted in evidence only in exceptional cases and for limited purposes. Among these are cases where such evidence may throw light on the motive, intent, scienter, or identity. * * * The details of such other crimes are not admissible, except in so far as essential to disclose the motive or other matter for which it is admitted." And in Davis v. State, 213 Ala. 541, 105 So. 677, the court said in substance: The rule of law that testimony of distinct and disconnected crimes should not be admitted in criminal cases is well grounded in principle and such evidence brought forward to bolster up another and distinct charge is so manifestly harmful and unfair as to call for a reversal of verdicts so obtained. But the rule will not avail to exclude evidence of the res gestæ, nor to close the door against proof of motive for the crime under investigation.

In our case of Dennison v. State, 17 Ala. App. 674, on page 677, 88 So. 211, on page 214, this court said: "The general and well-recognized rule is that in a prosecution for a particular offense evidence tending to show defendant guilty of another and distinct offense, disconnected with the crime charged, is inadmissible; the manifest purpose of this rule being to prevent prejudice to the defendant in the minds of the jury by the introduction of evidence of offenses for which he is not indicted, to which he is not finally to answer, and building up a conviction on inferences of guilt from the fact that he had committed another offense. The justice, fairness, and reason for the rule is apparent, and, as said in the case of Gassenheimer v. State, 52 Ala. 313: 'A strict adherence to it is necessary to prevent criminal prosecutions from becoming instruments of oppression and injustice.'" And further in said case, this court said:

"The Constitution of this state (Const. 1901, § 6) provides that in all criminal prosecutions the accused has a right to be heard by himself or counsel, or either, to demand the nature and cause of the accusation, and to have a copy thereof, etc.; and in the Gassenheimer Case, supra, it was said:

"'No man shall be twice put in jeopardy for the same offense, and of the nature and cause of the accusation made against him he shall be fully informed before he is called to trial, is the paramount law of the land. Than that accusation he cannot be supposed to stand prepared to answer.'

"The rule above announced, which requires that all evidence which is introduced shall be relevant to the guilt or the innocence of the accused, is always applied with considerable strictness in criminal proceedings. The wisdom and justice of this, at least from the defendant's standpoint, are self-evident. The defendant can with fairness be expected to come into court prepared to meet the accusations contained in the indictment only, which in this case was the larceny of the Dodge automobile, and, on this account, all the evidence offered by the state should consist wholly of facts which were within the range and scope of the allegations contained in the indictment upon which he is being tried. The evidence introduced over the defendant's objection relating to other offenses than that charged in the indictment no doubt alarmed the suspicions of the jury, or at least it may have had that effect, and inclined them the more readily to believe in the guilt of the defendant of the offense charged, and rendered the jury less inclined to listen or give proper weight and consideration to whatever was offered or said in his defense. For it is well known, in fact a matter of common knowledge, that the large majority of persons of average intelligence are untrained in logical methods of thinking, and are therefore prone to draw illogical and incorrect inferences and conclusions without foundation. It is also a matter of common knowledge that from such persons jurors are selected. And like others they will very naturally believe that a person is guilty of the offense with which he is charged if it is proved to their satisfaction that he has committed a similar offense, or any offense of an equally heinous character. So, as before stated, the general rule in this connection forbids the introduction of evidence which will show, or tend to show, that the accused has committed any crime wholly independent of the offense for which he is on trial.

"There are exceptions to this general rule, however. These exceptions are succinctly stated in the *Gassenheimer Case, supra,* and are, in substance, as follows: While evidence of any other offense than that specifically charged is prima facie inadmissible, such evidence will be received, when necessary to prove the scienter or guilty knowledge, when an element of the offense charged; (2) when the offense charged and the offense proposed to be proved are so connected that they form part of one transaction; (3) when it is material to show the intent with which the particular act is charged as criminal was done, evidence of another similar act, though in itself a criminal offense may be given; (4) when it is necessary to prove a motive for the criminal act imputed, and there is an apparent relation or connection between that act and other criminal acts committed by the accused; (5) when it is necessary to prove the identity of the offender, or of an instrument used in committing the offense; (6) there are also cases in which the accusation itself involves a series of acts which must be proved to make out the offense; (7) and cases in which the several offenses are all a part of the res gestæ."

 From the foregoing it may be stated as a general rule, proof of the commissions of other crimes is not admissible in evidence, since the commission of a separate and distinct crime ordinarily does not establish the guilt of the defendant on trial for a separate offense. However, as stated above, it is a well recognized exception to this rule, that proof of other crimes of the same or similar nature, committed at or approximately the same time, is admissible for the purpose of showing the intent on the part of the accused. This is especially true where the intent is an essential element of the crime charged. However, the court should be very cautious in allowing testimony concerning commissions of other crimes, as this type of testimony has damaging or prejudicial tendencies, and at times may be unjustly damaging.

Upon examination of the record we find that this question was asked the witness, Dr. Schulhofer: "I will ask you whether or not you examined these 817 affidavits or certificates in your capacity as a handwriting expert, said affidavits or certificates bearing the endorsement 'Pay to the order of W. W. Crow,' with the name of W. W. Crow under the endorsements, and whether or not in your opinion as a handwriting expert the signatures on the 817 affidavits were written by 11 different individuals." Over the objection and exception of the defendant on every conceivable ground, the witness was allowed to state: "I examined them, and in my opinion as a handwriting expert the 817 affidavits were signed by 11 different individuals."

In State's Exhibits Nos. 101 to 112, inclusive, there were approximately three hundred affidavits or certificates. All of these were allowed to be introduced in evidence, over the objection and exception of the defendant. It appears none of the parties specified in these affidavits or certificates took the stand to deny that they signed the same or that they were not signed by an authorized agent. There were also three affidavits claimed by the State to be forgeries included with the balance of them, over the objection and exception of the defendant. These certificates were in the name of Major Barrett and Christine Barton. No one testified that these instruments were forgeries. Also the court allowed the State to elicit testimony from witness, Singleton, as to some conversation held with the defendant involving a number of other witness certificates which the State claimed bore a similarity in handwriting.

We note the following occurred: "Did you tell him that you were investigating and trying to find out about these particular certificates *that you had there with you at the time?*" Also: "You understand we are still talking about these certificates here, similar to this certificate, State's Exhibit No. 36, bearing the name of H. E. Parker? A. They were all of that nature, that affidavit form and type, and *had to do* with these claims that Mr. Crow had collected money on." This was hearsay pure and simple. And further: "Will you just tell us what was said in the way of questions by you, and what Mr. Crow's answers were?"

We will not attempt to set out each and every one of the questions along this same line, but the testimony of the witness, Singleton, is filled with questions of the same character which were all objected to by the defendant, which objections were overruled, and exceptions taken, that is, the questions had to do with certain witness certificates or affidavits which Singleton

had with him at that time and which were not introduced in evidence on the trial of the case and which were not identified and proven to be forgeries.

The same thing is true of the testimony of the witness, J. L. Kirby, and of the witness, Clyde Sullivan, all dealing with some alleged forged affidavits which were not introduced in evidence, not presented to the jury, and not shown to be forgeries.

The law with reference to the admission of any such testimony is that it is the duty of the court to carefully scrutinize such testimony of other crimes and the first inquiry should be, has another crime been committed, by the defendant, and brought within the rule governing matters of this sort.

As being applicable to the case at bar we quote from the case of Gassenheimer v. State, 52 Ala. 313, Chief Justice Brickell, in a well reasoned opinion stated that: "Rumors and suspicions may be born of such facts, and depend on such inferences, but not the verdict of a jury which is to stamp dishonor and guilt on the citizen. This must rest on a more substantial basis. The law of the land has a higher logic and humanity than to found its judgments on such facts, and the vague inferences which unreasoning suspicion would draw from them."

In Martin v. State, 18 Ala.App. 184, 89 So. 845, the State introduced, over the objection and exception of the defendant, a check given by the defendant at about the same time as the alleged forged check, and the court held this reversible error. The court goes on to recognize the exception to the general rule that in a forgery case instruments similar to the one in the indictment are admissible for the purpose of showing the intent, and (page 846): "We still hold to that view as being sound, *but it has never been held,* so far as we can find, that a check, not a forgery, may be introduced in evidence over the timely objection of the defendant on trial for forgery, to show his intent in forging the instrument laid in the indictment."

In the case of Sealey v. State, 218 Ala. 167, 118 So. 233, wherein the defendant was convicted of obtaining property by false pretenses, which is a crime similar in nature to forgery; in fact, a number of the text books treat the two crimes together. In the cited case the trial court allowed the State to prove over the objections of the defendant that he had given similar checks along about the same time, which were dishonored by the bank, and the Supreme Court holds (page 234) : "The fact, therefore, that the defendant gave checks to different people, to whom or when does not appear, which were not honored by the bank, was without legitimate tendency to prove that the particular representation here involved was fraudulently made with guilty intent." The court also goes on to state in the cited case that it is not unmindful of the fact that the issuance of a check on a bank without explanation to the contrary may in itself constitute a false pretense, but it was not shown that the checks given to different people, which were not honored by the bank, were given without explanation and fraudulently to obtain property. Underhill's Criminal Evidence, 4th Edition, Section 684, Page 1290, states this to be the law.

It was held, in Fox v. People, 95 Ill. 71, that it was error to permit evidence of what the accused said of another and different note, the forgery of which was not established and that the statements of a defendant as to other instruments of the same kind, supposed to have been uttered by him, are not admissible in evidence. The cited case also holds that evidence of admissions or statements in reference to the note, for the forgery of which he was being prosecuted, was admissible but what he said of another note was not admissible to prove the charge on which he was being tried, and the cited case further held that proof that the defendant had previously passed similar bills is admissible to prove guilty knowledge, *but* the proof of the existence of such other *false* bills is required in any event.

The case of Anson v. People, 148 Ill. 494, 35 N.E. 145, holds that it is error to admit evidence of declarations of the defendant in respect to alleged false instruments which are not produced to the jury or proven to be forgeries.

In People v. Whiteman, 114 Cal. 338, 46 P. 99, the Supreme Court of California expresses the proposition under discussion very clearly in the following words (page 100) : "When the fact of guilty knowledge becomes material, it must appear that the check described in the indictment was itself a forgery. Proof that defendant, passed other checks which were forged cannot be introduced, when unaccompanied with other inculpating facts, to establish the corpus delicti. And, when the body

of the offense has been established, and that defendant passed the check, and it is sought to show guilty knowledge by the fact that defendant also passed other forged paper, and prosecution assumes the same burden as to all the other checks introduced. It must show that such checks were forged."

As being essential and applicable to the case at bar we are clear to the conclusion that the State was under the burden of showing by competent and legal testimony: (1) The forgery, by the accused, of the instrument laid in the indictment; (2) other alleged forgeries by defendant, within the stated rule, to show guilty knowledge; (3) the same burden of proof is cast upon the State to show the other forgeries as is cast on the original forgery contained in the indictment.

Having these rules in mind, and in compliance therewith, we hold that the testimony elicited from State witness, Dr. Schulhofer with reference to the numerous affidavits was erroneous and there could be no question but that it was highly prejudicial to the defendant. To a like effect was the introduction in evidence of the three affidavits or certificates signed by Major Barrett and Christine Barton, and also the statements alleged to have been made by the defendant with reference to other affidavits which were in no wise shown to have been forgeries.

Several exceptions were reserved to the oral charge of the court, and to alleged improper argument of the Solicitor. We pretermit a discussion of these questions as not being necessary to this decision and the conclusion reached by this Court.

The remaining proposition is predicated upon an alleged variance between the allegations of the indictment and the proof offered in support thereof. It is insisted by appellant that where the indictment charging forgery sets out the alleged forged instrument in extenso, the proof must correspond thereto. The proposition is axiomatic. Any material variance between the alleged forged writing as proved and as set forth in the indictment is fatal when the writing is pleaded according to its tenor. Underhill, Criminal Evidence, 4th Ed., 682. The writing complained of (affidavit) in this case was, as stated, set out in extenso in the indictment. The said affidavit as shown by the bill of exceptions contained also the endorsement "Pay to the

order of W. W. Crow, A. R. Mays." In this case the defendant was required to answer and defend only, the accusation as to the affidavit. He was not charged with the offense of forging, etc., the endorsement upon the affidavit, supra, hence it was error to allow the State to offer proof as was done, as to the endorsement. Upon examination of the principal State witness, A. R. Mays, the Solicitor propounded to said witness this question: "On the back of this (affidavit) did you sign that there, this endorsement 'Pay to the order of W. W. Crow, A. R. Mays?'"

Defendant objected to this question on the ground that it called for incompetent, immaterial, irrelevant and illegal testimony; that it had no bearing on the issues in this case; that it related to separate and independent transactions, and that it was not shown to be connected with the instrument involved in the indictment; that it was not shown to be part of the transaction charged in this indictment, and that it was not shown as having any connection with it; also that it was asking about some transfer or assignment of some instrument on the back of this instrument, and is not confined to the instrument in the indictment, but it is an enitrely separate and distinct paper or writing; that it is in variance with the indictment, and has no bearing on the issues involved in this case.

The court overruled the objection, to which ruling the defendant duly reserved an exception.

The witness then answered: No sir, I did not. As stated, this ruling of the court constituted error.

The defendant being called upon to answer the indictment was naturally informed that the forgery complained of consisted in the act of signing some one else's name to the face of the instrument itself and not to some endorsement appearing on the reverse side of it.

The State elected to set the instrument out in this way, then, of necessity, the proof, with which the defendant is confronted upon the trial, must conform to the indictment which has previously been presented to him and which contains the formal charges against him. Agee v. State, 113 Ala. 52, 21 So. 207.

In State v. Fleshman, 40 W.Va. 726, 22 S.E. 309, the indictment charged forgery of a note and the indictment set the note out in extenso and did not include the words

330

"with 6 per cent. int. from date." The court held that this note, bearing these words, was not admissible in evidence to sustain the allegations in the indictment as they did not correspond.

In the case of McDonnell v. State, 58 Ark. 242, 24 S.W. 105, the court held that where the State elected to set out the instrument in full in the indictment, the proof must, of necessity, correspond thereto. There were some remarks in the cited case which appear to us to be very appropriate. The court went on to state that if a man be accused of stealing a white horse and it is so recited in the indictment, proof of the theft of a black horse is inadmissible to support the averments of the indictment. This is for the reason that the defendant may look at the indictment and determine by the very words of it the specific charge pending against him and which he is called upon to answer.

In Commonwealth v. Dallinger, 118 Mass. 439, the indictment charged forgery of a note which was made payable to the maker, and the court held that a conviction could not be sustained by showing a forged endorsement of the note.

In the case at bar, if the State had elected to proceed against this defendant for the forgery of the endorsement appearing on the reverse side of the affidavit set out in Count Two of the indictment, it could have also set it out in extenso, the same as it set out the affidavit itself. Failing to do so, it cannot wait until the trial date and put a witness on the stand to prove that he did not sign the endorsement appearing thereon.

Other questions are presented but, from what has been said, need not be discussed and decided. For the numerous errors in the rulings of the court, above indicated, the judgment of conviction from which this appeal is taken is reversed and the cause remanded.

Reversed and remanded.

On Rehearing.

Appellant makes motion to strike the application for rehearing in this case, upon the grounds of the failure of appellee to comply with the provisions of Supreme Court Rule 38, in that, appellee did not, within fifteen days, file and serve a brief upon counsel for appellant as said rule requires. Ample proof to sustain the facts upon which the motion is rested, has been furnished this court, and is without dispute.

The motion to strike appears to be well taken, and is granted upon authority of Supreme Court Rule 38; Taylor v. State, 27 Ala.App. 538, 175 So. 698; Williams v. State, 27 Ala.App. 525, 175 So. 697.

Opinion amplified and extended.

Application stricken.