63·So.2d 285

## LOVE v. STATE.

### 8 Div. 58.

Court of Appeals of Alabama.
Feb. 3, 1953.

Si Garrett, Atty. Gen. and Thos. F. Parker, Asst. Atty. Gen., for the State.

Claud D. Scruggs, Guntersville, for appellant.

PRICE, Judge.

Appellant was convicted under an indictment charging burglary in the second degree, and was sentenced to the penitentiary for a term of three years.

The State contended that a store operated by Hollis Vest and his wife was broken into on the night of August 12, and some

money and a watch was taken. On October 19th the watch was seen on defendant's arm, and his arrest followed. On the trial both Mr. and Mrs. Vest identified the watch as being the one taken from the store.

Defendant and his witnesses testified he had obtained the watch in pawn from Ernest Montgomery. Defendant's Mother testified defendant was at home sick on the night of the burglary.

■ The evidence presented a question for the jury as to the guilt of defendant, and the motion to exclude the State's evidence and the affirmative charge were properly refused.

■ The possession of the building alleged to have been burglarized was laid in the husband, Hollis Vest. The grocery business was operated in said building by both husband and wife in the name of L. H. Vest Grocery. The fact that the evidence showed the legal title to be in the wife did no establish a fatal variance in the indictment and proof. Title 15, Section 245, Code 1940; Lindsey v. State, 29 Ala. App. 25, 191 So. 474; certiorari denied 238 Ala. 374, 191 So. 475; Nix v. State, 33 Ala.App. 603, 36 So.2d 452; Lowe v. State, 32 Ala.App. 176, 22 So.2d 618.

■ Defendant testified as a witness in his own behalf. On cross examination, the Solicitor, over objection and exception, was permitted to ask if defendant had not been sent to the reform school for breaking into places. The defendant answered: "I went there for something they say I did."

The court instructed the jury:

"The Court: Gentlemen, I want to say to you at this time, that last series of questions being asked just before you left, the only purpose, the only possible ground for the admissibility of those would be the attacking of the credibility of the defendant as a witness. They are not to be construed in any way as any proof of his guilt, of course. He is only charged with one offense here and the fact that he might have been convicted of any other offense would only go to his credibility

and not to the question or guilt or innocence in this case."

A witness, or defendant when testifying in his own behalf, may be questioned on cross examination, for the purpose of attacking his credibility as a witness, as to whether he has been convicted of a crime involving moral turpitude. Section 434, Title 7, Code 1940; Ala.Dig., Witnesses ⊕→337 (5).

The form of the interrogation in this case was not as to a former conviction for crime, but the mere fact as to whether defendant had been sent to the reform school, which would not be a proper inquiry.

Juvenile courts, under the provisions of Chapter 7 of Title 13, Code, are given the power to determine the status of children, and if a child under sixteen years is adjudicated a delinquent, the court may commit him to the care and custody of appropriate State institutions established to receive and care for delinquent children. Such State institutions are commonly referred to as reform schools.

"No child shall be denominated nor held to be a criminal by reason of any such adjudication, nor shall such adjudication be held to be or denominated a conviction." Section 378, Title 13, Code.

"No disposition of the case of a child dealt with for delinquency under this chapter * * * shall be given or heard in any civil, criminal, or other cause or proceeding whatever, or in any other court, be lawful or proper evidence against such child * * * for any purpose". Section 377, Title 13, Code.

In the case of Thomas v. United States, 74 App.D.C. 167, 121 F.2d 905, 908, the court had before it the provisions of an act of congress similar to our code sections, supra. The court observed:

"Similar statutes have been enacted in many of the states. Their enactment is founded upon strong social policy, and their aim is amnesty and oblivion for the transgressions of youthful offenders. The fundamental philosophy of the juvenile court laws is that a delinquent child is to be

considered and treated not as a criminal but as a person requiring care, education and protection. He is not thought of as 'a bad man who should be punished, but as an erring or sick child who needs help.' Thus, the primary function of juvenile courts, properly considered, is not conviction or punishment for crime, but crime prevention and delinquency rehabilitation. It would be a serious breach of public faith, therefore, to permit these informal and presumably beneficent procedures to become the basis for criminal records, which could be used to harass a person throughout his life." See also Schafer v. State, 121 Tex. Cr.R. 452, 51 S.W.2d 356; Malone v. State, 130 Ohio St. 443, 200 N.E. 473; State v. Kelly, 169 La. 753, 126 So. 49; Burge v. State, 96 Tex.Cr.R. 32, 255 S.W. 754; Smith v. State, 113 Tex.Cr.R. 124, 18 S.W. 2d 1070; Robinson v. State, 110 Tex.Cr.R. 345, 7 S.W.2d 571.

It is not made certain whether the sentence to the reform school was from a conviction for burglary or from an adjudication as to his status by a juvenile court. That such inquiry of the defendant before the jury was harmful cannot be doubted, and being erroneous, the judgment of conviction must be reversed.

We have not responded to other questions presented by the record, which will probably not recur in the event of another trial.

Reversed and remanded.