249 So.2d 644

Wilson Woodrow THOMPSON

v.

STATE.

6 Div. 11.

Court of Criminal Appeals of Alabama.

May 11, 1971.

Rehearing Denied June 15, 1971.

Richard A. Thompson, Tuscaloosa, for appellant.

MacDonald Gallion, Atty. Gen., and Lloyd G. Hart, Asst. Atty. Gen., for the State.

## PER CURIAM.

Appellant was convicted by a jury in the Circuit Court of Tuscaloosa County of forgery in the second degree and sentenced to seven years in the penitentiary.

At the conclusion of the State's case appellant moved that the evidence be excluded, which motion was overruled. The affirmative charge requested in writing was refused by the court.

The record shows that the following transpired at the trial:

"Q. I will ask you if in Minnesota in 1960 you were convicted of abduction and received up to five years?

"MR. THOMPSON: We object.

"THE COURT: Overrule.

"MR. THOMPSON: It isn't shown it is an offense involving moral turpitude and not in proper form.

"THE COURT: Overrule.

"MR. THOMPSON: Except.

"A. Yes, sir."

It is proper on cross-examination of defendant testifying in his own behalf to introduce into evidence prior convictions of the defendant which involve moral turpitude in order to attack the credibility of the defendant. Tit. 7, § 434, Code of Alabama, 1940, recompiled 1958. Love v. State, 36 Ala.App. 693, 63 So.2d 285; White v. State, 40 Ala.App. 613, 119 So. 2d 344; McCreary v. State, 42 Ala.App. 410, 166 So.2d 914; Lanier v. State, 43 Ala. App. 38, 179 So.2d 167; and McGovern v. State, 44 Ala.App. 197, 205 So.2d 247.

The question with regard to a conviction for abduction in Minnesota was too general and no preliminary proof was adduced as to whether the crime of abduction involved moral turpitude.

This situation is very much like that in Bryan v. State, 18 Ala.App. 199, 89 So. 894, which is as follows:

"As affecting the credibility of a witness, it may always be shown under our statute that the witness has been convicted of some crime involving moral turpitude. The appellant insists that the trial court was in error in refusing to permit him to ask Alberta Franks if she had not been convicted on a charge of vagrancy in Mississippi. Vagrancy under the law of Mississippi may or may not be a crime involving moral turpitude. Like our statute, there are many acts enumerated which, if found to exist, will be held to constitute one a vagrant. For instance, persons known as tramps and wandering about in idleness, who are able to work and have no property to support them, are classed as vagrants. And then every common prostitute is classed as a vagrant; yet it cannot be contended that the vagrant tramp is guilty of an offense involving moral turpitude, while it cannot be denied but that the vagrant common prostitute is guilty of an offense involving moral turpitude. So to place the trial court in error in this ruling it was necessary for the defendant to have shown that the act characterized as va-

grancy under the law would have been such an act as involved moral turpitude."

The holding in *Bryan*, supra, was followed in Sims v. Callahan, 269 Ala. 216, 112 So.2d 776, where the Supreme Court concluded:

"There is no showing in the record that the act done by Dr. Callahan was inherently immoral."

The Minnesota abduction statute denounces several acts as constituting the crime. One of these is:

"Every person who shall take a female under the age of 18 years * * * without the consent of her father, mother, guardian, or other person having legal charge of her person, for the purpose of marriage;" Minnesota Statutes, 1957, Sec. 617.05.

We are not informed from the record before us what particular act or acts under the Minnesota Statutes formed the basis of appellant's prosecution and subsequent conviction. It is very possible his conviction rested upon that part of the Minnesota Statute just quoted. We are of the opinion that a consensual marriage with a female under eighteen without the consent of her parent, guardian, etc., would not necessarily involve moral turpitude.

For the foregoing reasons, it was error for the court to admit this evidence.

■ Appellant claims that there is a fatal variance between the allegations of the indictment and the proof offered by the State.

The indictment is set out in the record as follows:

"1. The Grand Jury of said County charge that before the finding of this Indictment WILSON WOODROW THOMPSON, alias WILSON THOMPSON, alias TOM THOMPSON whose name is otherwise unknown to the Grand Jury with intent to injure or defraud, did falsely make, alter, forge, or counterfeit a certain ____credit card invoice____, which was in substance as follows:

| "04 4997 927 7 | | | | | 04264 |
|---|---|---|---|---|---|
| Sidney McLellan | | | | | |
| | | | 1965 | | Billing Copy |
| "Sold by: | | | | | Purchaser's Signature |
| Gerald Moore | | | | | X   Sidney McLelland |
| Tuscaloosa, Ala. | | | | | Co. Issuing Card |
| 3   074   429 | | | 12   30   67 | | Pure Union 76 |
| "Quan.        Price | | Amount | | Vehicle License No. | |
| 2 qt. oil | | 1.00 | | −19511 | |
| 825 14 tire | | 28.35 | | State | |
| 1000 change | | 1.50 | | Ala. | |
| Sales tax | | 1.79 | | Pure Oil Co. a Division | |
| Total | | 10.00 | | of Union Oil Company | |
| Grand Total | | 42.64 | | of California | |
| | | | | No.   0849593 | |
| Includes Applicable Federal, State and Local Motor Fuel Taxes | | | | | |

"AND NOTHING ON THE BACK THEREOF:
"or with intent to injure or defraud, did utter and publish as true the said falsely made altered, forged, or counterfeited ____a credit card invoice____ knowing the same to be so altered, forged, or counterfeited,

"against the peace and dignity of the State of Alabama."

In support of his claim he cites Crow v. State, 28 Ala.App. 319, 183 So. 897 and Brown v. State, 30 Ala.App. 339, 7 So.2d 24.

■ We recognize the holding in *Crow*, supra, that before a defendant can be convicted on a trial based on indictment the proof must conform to the indictment which has been presented against him.

In the Brown case, supra, the indictment was in the regular form prescribed for forgery of an instrument in writing while the proof showed a forged endorsement on the instrument in writing which was a warrant issued against funds in the Treasury of Dale County to one J. H. Norris, or order, and signed by the Judge of Probate, County of Deese. The warrant was a complete instrument and there was no evidence that any part of it was forged, but the State relied on a forged endorsement on the instrument in writing, etc. The court held that where endorsement on an instrument was forged, rather than the instrument itself, the indictment must have such averments as will make the facts of a forged endorsement affirmatively appear.

In denying certiorari, the Supreme Court held:

"* * * Under our statute, section 200, supra, a person who is sought to be convicted for forging an indorsement should be apprised of the fact that it is the indorsement which is involved and not the instrument which is indorsed." [242 Ala. 485, 7 So.2d 28.]

In the case at bar the credit card invoice, although principally filled out by the operator of the filling station was of no value until the signature of the holder of the credit card was added as a part of the invoice. No endorsement of a complete instrument in writing was involved. The forgery was of the instrument described in the indictment. The holding in Brown, supra, is not an apt authority in this case.

In this case we see no violation of the fundamental rule declared in Crow, supra, that the proof must conform to the indictment which has been presented against a defendant.

The following testimony is pertinent to the next argument of the appellant:

It appears from the testimony of State's witness Sidney McLelland that on December 31, 1967, he lost his billfold which contained a Pure Oil credit card, a driver's license, a Loyal Order of Moose card, a union book, a discharge from the U. S. Coast Guard, and some Masonic papers. He later received through the mail a copy of an invoice for the purchase of gasoline, a tire and other service from Gerald Moore with the name Sidney Mc-Lelland written in on the blank for the purchaser's signature. He denied that he had signed the credit card invoice or that he knew anything about the particular transaction at the Gerald Moore filling station.

State's witness, J. W. Woods, an Alabama State Trooper, testified that on the night of February 19, 1968, at approximately 8:45 P.M., he saw appellant riding in a blue and white 1957 DeSoto automobile, with a California license tag, and heading North on U.S. Highway 11 near Tuscaloosa; that he had been asked by the Tuscaloosa police to stop the car; that he did stop it near a Pure Oil service station on the outskirts of Tuscaloosa (within police jurisdiction); and that there were two people in the automobile. The driver identified himself as Luther Thompson and later the appellant identified himself as Tom Thompson. The trooper did not arrest either of the parties, but requested that the driver not move the automobile until the police could be notified. The driver came and sat in the patrol car with the trooper. The trooper told the men that he was looking for Wilson Woodrow Thompson for passing a stolen credit card. The police were notified and several officers arrived in two cars in a few minutes. Police Officer Norris, upon arrival, went to the car and testified that he shined a flashlight in the car and found on the floorboard a black bag, which he took. The bag could be seen from the outside of the car. This bag was later identified as having the billfold and different papers in it which were introduced in evidence. When the trooper stopped the car, Luther Thompson was the driver and appellant was sitting next to him in the front seat. When Detective Russell of the Tuscaloosa police arrived

with a mug shot of appellant he placed him under arrest and brought him to police headquarters. No search warrant had been issued although the police claimed to know of one or more warrants outstanding for the arrest of the defendant at the time he was apprehended.

Upon the introduction into evidence of the billfold, the credit card and other papers found in the bag, the appellant made timely objections that the exhibits were not admissible because they were obtained by an illegal search.

The specific questions and answers of the cross-examination of State's witness Norris in relation to the circumstances of the search appear as follows:

"Q. And how did you find the little black bag in the automobile?

"A. We had Mr. Thompson out of the car and I shined a light over there and it was laying in the floorboard.

"Q. You testified it was under something, didn't you?

"A. It was laying next to the seat where he tried to put it under the seat or somebody did.

"Q. You just know where you saw it?

"A. Yes.

"Q. Did you have to look down to see it?

"A. No.

"Q. Did you have to open the door to see it?

"A. Did not.

"Q. You could see it from the outside?

"A. True.

"Q. Who is the first one who saw it?

"A. Me."

According to the testimony, the black bag containing the exhibits objected to was visible from outside the car where it was found when the witness shined his light into the car.

The search objected to was not illegal under the testimony offered by the State. The arresting officer and those assisting him had reasonable cause to believe that the appellant had committed a felony and had the right to take him into custody. Tit. 15, § 154, Code of Alabama, 1940. We consider the search to be incident to a lawful arrest and within the permissible range of the holding in United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653. The more restrictive holding in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, applies only to searches carried out after June 23, 1969. Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed. 2d 388, April 5, 1971.

For the error in admitting testimony of a prior conviction for abduction in the State of Minnesota, the judgment is due to be reversed and the cause remanded for new trial.

The foregoing opinion was prepared by W. J. Haralson, Supernumerary Circuit Judge, and adopted by the Court as its opinion.

Reversed and remanded.