Zimmerman, J.
 

 In seeking a reversal, counsel for defendant relies on four grounds of error:
 

 (1) Refusal of the trial court to charge on the grades of homicide less than first degree murder;
 

 (2) Permitting the state to inquire of the defendant on cross-examination as to offenses charged against him in the Juvenile Court and there disposed of;
 

 (3) Failure to instruct the jury adequately on the matter of confessions;
 

 (4) Refusal to charge that if the defendant aban
 
 *448
 
 doned participation in the attempted robbery, he was entitled to acquittal.
 

 These questions will be discussed in the order stated.
 

 The indictment was drawn under Section 12400, General Code, reading in part: “Whoever, purposely, and either of deliberate and premeditated malice, or by means of poison, or in perpetrating or attempting to perpetrate rape, arson, robbery or burglary, kills another is guilty of murder in the first degree *
 
 *
 
 Because of the peculiar wording of the quoted statute, this court has held that to support a conviction thereunder for a commission of any of the specific crimes therein named, intent or purpose must be shown. In commenting upon this phase of the statute the following language is used in 21 Ohio Jurisprudence, Section 14, pages 47 and 48:
 

 “Unlike the common-law rule and that established in some states, the statute is clear that there must be an intentional killing in this type of murder as well as in the deliberate and premeditated type. However, it is not necessary to show deliberate and premeditated malice in such a killing. The enormity and turpitude of the criminal act in which the offender is engaged at the time supply the place of the deliberate and premeditated malice made an element of the first class. It was the intent of the legislature to make this a substitute for deliberation and premeditation.”
 

 It has been contended with much earnestness that where one is indicted and tried under Section 12400, General Code, for murder in the perpetration or attempted perpetration of one of the specific offenses designated in such statute, there must be a conviction as charged or an acquittal, and that an instruction on any lesser crime than murder in the first degree is whollv unauthorized. (Kinkead, J., in
 
 State
 
 v.
 
 Pierce,
 
 24 N. P. (N. S.), 413.)
 

 However, this court is committed to a broader view
 
 *449
 
 through a number of decisions covering a period of many years. Such view, relating to that portion of the statute having to do with murder in the commission of one of the felonies enumerated, is fairly stated in 21 Ohio Jurisprudence, Section 14, page 51, as follows: •
 

 “Where an indictment charges a defendant with murder under this part of the statute, and no other class of homicide is charged, and the evidence tends to prove no other grade of crime, no instruction should be given to the jury concerning murder in the second degree or manslaughter. Hence, the accused should be convicted of the extreme offense or none at all. However, it has generally been held that, where there is evidence to support a lesser charge, the accused might rightfully be convicted of the lower offense and the court would be justified in charging upon it.”
 

 See Section 13448-2, General Code;
 
 Robbins
 
 v.
 
 State,
 
 8 Ohio St., 131;
 
 Adams
 
 v.
 
 State,
 
 29 Ohio St., 412;
 
 Dresback
 
 v.
 
 State,
 
 38 Ohio St., 365;
 
 Lindsey
 
 v.
 
 State,
 
 69 Ohio St., 215, 69 N. E., 126;
 
 Stake
 
 v.
 
 Schaeffer,
 
 96 Ohio St., 215, 117 N. E., 220, L. R. A. 1918B, 945, Ann. Cas. 1918E, 1137;
 
 Bandy
 
 v.
 
 State,
 
 102 Ohio St., 384, 131 N. E., 499, 21 A. L. R., 594. And compare,
 
 Freeman
 
 v.
 
 State,
 
 119 Ohio St., 250, 163 N. E., 202, and
 
 Glasscock
 
 v.
 
 State,
 
 125 Ohio St., 75, 180 N. E., 539.
 

 This brings us to an examination of the evidence in the instant case. Whether defendant was entitled to an instruction on a lesser degree of homicide than murder in the first degree depends largely upon an analysis of his alleged confession, which the state introduced in evidence as a part of its case. Taken as a whole, it is our conclusion that such confession cannot reasonably be said to contain sufficient elements of unintentional conduct or accident to warrant a charge grounded upon that theory.
 

 When the facts of any case disclose that an indi
 
 *450
 
 vidual has deliberately gone out to commit robbery with a loaded firearm in his hand, and shoots and kills his victim in that undertaking, it is difficult to conceive that the act was unintentionally done., The guilty person should be held strictly accountable for the atrocity. At least, in such a setting, an unintentional or accidental killing should be fairly presented by the evidence to merit serious attention.
 

 In this case the general charge was correctly limited to murder in the first degree. If the jury believed the evidence adduced by the state, a verdict of guilty in accordance with the indictment was proper. If it believed defendant’s account of'what transpired, as he gave it on defense, the verdict should have been one of acquittal. There was no middle ground.
 

 Of course, it goes without saying that the trial judge erred in favor of the accused when he charged at the request of counsel that if the shooting was accidental, defendant should be found not guilty. If the element of accident were in the case, the shooting occurred while defendant was engaged in an unlawful act, and could be nothing short of manslaughter. Sections 12404 and 12421, General Code;
 
 State
 
 v.
 
 Schaeffer, supra; Freeman
 
 v.
 
 State, supra;
 
 Wharton’s Criminal Law (12th Ed.), Vol. 1, Section 449, pages 687 and 688.
 

 Upon cross-examination of defendant, the record shows the following:
 

 “Q. You wrecked a railroad train once, didn’t you?
 

 “Objection by counsel for defendant.
 

 “A. They tried to put the blame on me. *
 
 *
 
 *” “Recess
 

 “The Court: I understand there is an objection to the questioning of defendant about a railroad wreck.
 

 “Mr. Buonpane: There is.
 

 “The Court: I will hear you on your objection.
 

 “Mr. Buonpane: That question, Your Honor, is ad
 
 *451
 
 dressed to some incident or alleged offense which might have taken place, and occurrences, prior to this in question. Wherever it happened, or whatever it was, it was disposed of in Juvenile Court. Now, matters that are treated in Juvenile Court with reference to juvenile offenders are not placed in the same category as offenses or crimes, when committed by juvenile offenders. They are disposed of not as crimes, but as delinquencies.
 

 “Whereupon discussion was had by the Court with counsel for plaintiff [the State] and counsel for defendant.
 

 “And thereupon the Court overruled to [sic] the objection of counsel for defendant; to which ruling of the Court counsel for defendant then and there excepted.
 

 “And thereupon the jury returned to the courtroom.
 

 “Cross Examination resumed by Mr. Hart.
 

 “Q. Isn’t it true that some years ago you wrecked a railroad train? A. No, sir.
 

 “Objection by counsel for defendant.
 

 “The Court: Wait until your attorney has time to make his objection and the Court has time to rule.
 

 “Q. Isn’t it true you wrecked an engine on the New York Central Belt Line by placing a spike on the track? A. No, sir, I deny that, I was placed on probation any way.
 

 “Q. What is that?
 

 “Mr. Buonpane: I object to each and every one of these questions along that line, and take my exceptions.
 

 “A. I was placed on probation for that and didn’t do. it.
 

 “Q. Who put you on probation, some judge? A. Yes.
 

 “Q. Isn’t it true that in 1931 you held up a man by the point of a gun?
 

 
 *452
 
 “Objection by counsel for defendant.
 

 “Objection overruled; exception.
 

 “A. Yes, that.
 

 “Motion to strike the answer from the record.
 

 “Motion overruled; exception.
 

 “Q. You did do that? A. Yes.
 

 “Q. Isn’t it true that in 1933 you entered a place and burglarized it and took some property? A. No, we didn’t have a fair chance on that.
 

 “Q. Isn’t it true that in May, 1932, on the 12th day, you committed burglary and larceny? A. No, sir.
 

 “Q. That is not true? A. No, sir.
 

 “Q. Isn’t it true you escaped twice from the Hudson Boys Farm? A. Yes.
 

 “Mr. Buonpane: I am objecting to all these questions. I take my exceptions.
 

 “Objection overruled; exception.”
 

 We consider the above questions objectionable under the pronouncement of this court in
 
 Wagner
 
 v. State, 115 Ohio St., 136, 152 N. E., 28, particularly in the light of what is about to be said.
 

 Taking various of the questions and answers together, it is reasonably plain that defendant was being examined as to matters which had been the subject of proceedings in the Juvenile Court, and in which he had been a principal. This becomes the more convincing when we consider defendant’s undisputed testimony that he became sixteen years of age on October 21, 1934, and when we turn to Section 1659, General Code, requiring that “When a minor under the age of eighteen years is arrested on and under any charge, complaint, affidavit, or indictment, whether for a felony or a misdemeanor, such child shall be taken directly before the juvenile judge;” etc.
 

 Section 1669, General Code, provides: “The disposition of, or any order, judgment, or finding against a child under this chapter [Juvenile Court], or any evidence given in any proceeding thereunder, shall not
 
 *453
 
 in any civil, criminal or other cause or proceeding whatever, in any court, be lawful or proper evidence against such child for any purpose whatever, except in subsequent cases herein against the same child.” (Referring to the Juvenile Court.)
 

 The Supreme Court of Louisiana had occasion to interpret a provision similar to our Section 1669, General Code, in the case of
 
 State
 
 v.
 
 Kelly,
 
 169 La., 753, 126 So., 49. That court sustained a ruling by the trial court refusing
 
 to
 
 permit questions
 
 to
 
 be propounded to a fourteen year old witness on cross-examination to affect his credibility, based upon charges against him in the Juvenile Court, but containing no mention of such tribunal. Appropriate to the instant case is the following language from the opinion: “The Juvenile Court Act for the parish of Orleans provides that: ‘No charges or affidavits made, evidence given or judgment rendered against any child in said court [meaning the Juvenile Court] shall be at any time thereafter admissible against said child in any other proceedings in any other court of the state.’ Section 6, Act No. 126, of 1921 (Ex. Sess.) p. 321. * * *
 

 “It is equally within the ban of the provision to use such proceedings, or the facts elicited by such inquiry, against the one proceeded against as a juvenile, in any other court than the juvenile court, whether they be used against him as a defendant or other party litigant, or as merely a witness, to discredit him, in a case by and against another.”
 

 There is no difficulty in discerning the purpose underlying the enactment of Section 1669, General Code. Misdeeds of children are not looked upon in the Juvenile Court as crimes carrying conviction, but ,as delinquencies which the state endeavors to rectify by placing the child under favorable influences and by the employment of other corrective methods.
 

 Motivated by a humanitarian impulse, the law prohibits the use of Juvenile Court proceedings, or of
 
 *454
 
 proof developed thereon, against a child in any other court to discredit him or to mark him as one possessing a criminal history. To permit their use for such purpose is contrary to both the letter and spirit of the legislative enactment in question.
 

 Under no circumstances could the state have introduced records from the Juvenile Court proving or tending to prove the commission of the acts implied in the questions asked defendant. Since the foundation upon which the questions in issue rested could not be exposed because of the inhibition of the statute, the questions themselves were barred by the same obstacle.
 

 These observations result in the conclusion that the trial court committed prejudicial error in allowing the state, especially over objection and protest of counsel, to inquire of defendant as to his past behavior, founded upon his Juvenile Court involvements.
 

 We attach small importance to the last two assignments of error. The trial court instructed the jury sufficiently as to confessions, including the manner in which they should be regarded, and the record fails to disclose that counsel requested anything further ou this subject.
 

 No charge on the effect of defendant’s abandonment of the plan to rob Patlon was requisite or proper. If his testimony were accepted, and it is the only testimony on the point, he never entered upon that project and therefore never abandoned it.
 

 Because of the error found to be prejudicial, the judgments of the Court of Common Pleas and of the Court of Appeals are reversed, and the cause remanded to the former court for further proceedings.
 

 Judgment reversed.
 

 Weygandt, C. J., Stephenson, Williams, Jones, Matthias and Day, JJ., concur.