Myers, J.
 

 Although a number of errors are assigned, the only one commanding serious consideration relates to the omission of the trial court to give to the jury a “not guilty” form of verdict. The circumstances giving rise to such action of the court were as follows:
 

 In the opening argument for the defense, Mr. Morris,' of counsel for the defendant, stated to the jury that the state had proven all the elements constituting the crime of murder in the first degree. While such statement does not appear in the formal record, it was so stated by counsel for defendant in oral argument in this court. Reference thereto also appears in the briefs. The final argument to the jury on behalf of the accused was made by Mr. Hargreaves of defense counsel. During such argument Mr. Hargreaves made reference to the previous statement of Mr. Morris in language as follows: “While we have entered a plea of guilty to murder in the first degree before you,
 
 *406
 
 ladies and gentlemen of the jury, we have acknowledged to you, for the purpose of the record.”
 

 At this point the trial court interrupted and propounded the following question:
 

 “Do you now, Mr. Hargreaves, for the purpose of the record, say that George Wells is guilty of unlawfully and purposely killing William Pantages while perpetrating or attempting to perpetrate a robbery? “Mr. Hargreaves: Yes, your Honor.
 

 ‘ ‘ The Court: Then the record may show such an admission on the part of the defendant, George Wells.
 

 “Mr. Hargreaves - (to the jury): Now, we have admitted that, ladies and gentlemen * *
 

 In order to comprehend the setting for such unusual statements, it is necessary to relate briefly the circumstances and nature of the crime for which defendant was on trial.
 

 The defendant, George Wells, and three others, on the-evening of December 16, 1937, entered the store and restaurant of William F. Pantages in Akron for the purpose of robbery. Pantages then had a large sum of money on hand for the purpose of cashing checks, that day being pay day at the plant of The General Tire & Rubber Company just across the street. As the four, each with a gun, entered the store they announced, “It’s a stick up” and ordered Pantages, his wife, his son, one employee and five customers to put up their hands'. Without reciting all of the details, it is sufficient to state that the record reveals a brutal murder committed in an attempt to perpetrate a robbery. Eleven or twelve shots were fired. Pantages was shot three times. The fatal wound was caused by a bullet fired by this defendant at a distance of six or eight feet. That bullet entered the back of Pantages, pierced his heart and lungs and came out through the chest. The four guns used at this affair had been procured by Wells and two other
 
 *407
 
 members of tbe gang in a daylight holdup on December 4, 1937. The guns and ammunition were in the possession of Wells from that time until the shooting of Pantages on December 16th. Thereafter Wells hid them in a cottage in the rear of his home. Other robberies had been committed by Wells and his accomplices between September 25, 1937, and the killing of Pantages. The details of the attempted robbery of Pantages and his death were testified to by many witnesses for the state. A full and complete confession was also made by the defendant. Wells did not take the witness stand in the trial, the only witness for the defense being his mother who detailed most of his career but knew nothing of his later depredations.
 

 Such were the circumstances when counsel on behalf of defendant, in the midst of argument, entered a plea of guilty to murder in the first degree for the purpose of the record.
 

 The record further reveals that thereafter counsel made an impassioned plea of mercy for the defendant, in the course of which he twice referréd to the plea of guilty of the defendant in words as follows: “He has come before you, through us and has entered a plea of guilty to murder in the first degree * *
 

 A little later counsel again made the statement: “He has entered a plea of guilty to murder in the first degree.”
 

 Later in his argument counsel for defense, in the presence of the defendant, stated to the jury the following: “You have one question before you, ladies and gentlemen of this jury. There is no question-but what the court will instruct you almost as a matter of. law that you must find the defendant guilty of murder in the first degree. I don’t know, within my memory and I don’t know7 within the- memory of the history of this county, when a man has come before a jury of his peers and said ‘I am guilty of murder
 
 *408
 
 in the first degree.’ He has always thrown some stones in the road heretofore, in the past — every defendant that I have ever known of or ever read of in the. history of this county, who has come before you — so that a ‘not guilty’ verdict would have to be passed upon by you. You do -not have to pass upon that question, and you have to pass upon the question of whether you are going to give this boy some mercy or whether you are going to send him down to his doom in the Ohio State Penitentiary in the electric chair.”'
 

 • At the close of arguments for defense and state, the trial court fully and correctly charged the jury on the issues of the trial and then stated to the jury:
 

 “This charge has been reduced to writing and you will have it with you in your jury room, and you may there read it for the purpose of refreshing your recollection as to what this court has stated to you orally on the law applicable to this case.
 

 “Since the court has prepared this charge, the defendant has admitted for the purpose of the record that the state has established beyond a reasonable doubt all the elements of the crime of murder in the first degree, and have [sic] said to you that he is guilty of unlawfully and purposely killing William P. Pantages while perpetrating or attempting to perpetrate a robbery. You are, therefore, not required to determine the issues of the case as presented to youfin this formal charge, but
 
 the sole question that the defendant has left for you to decide
 
 is as to what verdict you shall sign. I shall, therefore, submit to you but two verdicts, one ‘guilty as charged in the indictment,’ the other ‘guilty as charged in the. indictment, but we do recommend mercy.’ ” (Italics ours.)
 

 By such action of the trial court, it is claimed by defendant that he was deprived of his right of trial by jury, and his right to an impartial jury under the state Constitution, and was not convicted by due pro
 
 *409
 
 cess of law as guaranteed by the federal Constitution.
 

 It is well established that the jury is to decide all questions of fact and the judge only questions of law. During the progress of a jury trial situations frequently occur where the trial court must decide the province of the jury and the province of the court. Such decisions are made by the court in the exercise of judicial discretion. The exercise of that discretion will not be disturbed unless there was prejudicial error or a violation of constitutional rights. In the instant case an admission of guilt was made in the form of a plea of guilty during the progress of the jury trial. The court was met with an unusual situation for the reason that the defendant had neither waived the jury trial then in progress, nor withdrawn the former plea of “not guilty” made upon arraignment. The defendant now claims that he is entitled to a new trial. In order to be entitled to a new trial it is not only necessary for the defendant to show that there was irregularity but that such irregularity took from him the. constitutional right of a fair trial or was prejudicial error. In reviewing the action taken in the instant case, we are not required to commend the procedure followed by the trial court in meeting the unusual situation created. Our only duty, under Section 13449-5, General Code, is to determine from the record whether the accused was prejudiced thereby or was prevented from having a fair trial.
 

 We find no basis for the claim that defendant was deprived of his right to.-an impartial jury. The jury heard from one of defendant’s counsel that the state had proven all the. elements of the crime for which defendant was on trial. The jury then heard the other counsel for defendant state that a plea of guilty of murder in the first degree had been entered. The jury hen heard counsel for defense answer the court that reh admission was made for the purpose of the rec
 
 *410
 
 ord. Whatever variance there may have been in the trial, therefore, is in nowise chargeable to the jury.
 

 It is next urged that defendant was deprived of the right of trial by jury. Such claim is not based upon anything occurring before the plea of guilty was made by counsel for defense. On the contrary, such claim is based upon what occurred after and as a result of such admission of guilt. As already intimated, such claim cannot rest upon any dereliction of duty by the jury. The responsibility for whatever action was taken must rest upon the trial court and counsel for defense.
 

 Whatever else may be said of the action of counsel in making the unusual statements to the jury and court, it cannot be classed as prejudicial error. In oral argument counsel for defense stated that an “olive branch” was being extended to the jury in the' hope that a recommendation of mercy might be made. But complaint is made that when, by inquiry, the court had the plea of guilty affirmed in the record and then omitted to give the jury a “not guilty” form of verdict, the court thereby took from the defendant whatever effect such open confession and plea of guilty otherwise might have had on the jury on the question of recommending mercy. An admission for the purpose of the record is to be regarded as true. The defendant himself or counsel, as an officer of the court, in the presence of defendant and with his knowledge, may not make formal admission of previously proven facts for the purpose of the record, as was done in the instant case, and then later, in order to secure a new trial, deny the truth thereof or claim prejudicial error.
 

 It should be unnecessary to remind ourselves that constitutions and laws are designed “to establish justice.” The Constitution was never intended to be a cloak for strategy or other device employed to defeat
 
 *411
 
 the plainest principles of justice. The situation here is not like that in the case of
 
 Shipp
 
 v.
 
 State,
 
 128 Tenn., 499, 161 S. W., 1017, or any other case called to our attention. Counsel for defense in the instant case did not merely argue, as in the
 
 Shipp case,
 
 that the defendant was guilty as charged and proven by the state. When Mr. Morris, counsel for defense, thus argued without mention of any plea of guilty, the trial judge did not take any cognizance thereof. He permitted the argument to proceed. It was only when the other counsel for defense, in a more formal way, stated to the jury, “While we have entered a plea of guilty to murder in the first degree * * * for the purpose of the record,” that the trial court made inquiry whether counsel for defendant .wished to state definitely for the record the guilt of the defendant. What was occurring was not a mere expression of opinion by counsel. Counsel had said to the jury, “We have entered a plea of guilty # * *.” Before the beginning of the trial, a plea of “not guilty” had been entered. Therefore, when counsel stated to the jury, “We have entered a plea of guilty * * *,” it was a situation that challenged the attention of the court.
 

 ■ The attention of the court was challenged for the reason that entering a plea of guilty is more than mere argument. Under common law, as well as under statute, a plea of guilty demands judicial cognizance. When defense counsel in the midst of argument stated to the jury, “We have entered,a plea of guilty to murder in the first degree * * # for the purpose of the record,” an unusual situation was created which required the court, under the statute, to control its own proceedings. Section 13442-2, General Code, in part provides: “It shall be the duty of the judge to control all proceedings * * *.” . This does ,not mean that the clear and express provisions of the statute may be ignored or disregarded, but it does invest the
 
 *412
 
 court with power and authority to control the proceedings “with a view to expeditious and effective ascertainment of the truth regarding the matters in issue,” even as stated in the statute. Not only with respect to evidence and argument of counsel, but with respect to control of the proceedings generally, the court, in the furtherance of justice, has the duty under the Constitution and the law to see that the trial is orderly. No higher duty devolves upon a court. That the trial court is vested with such authority in the furtherance of justice is further evidenced by the last paragraph of Section 13442-8, General Code. That section sets forth the various steps in the order of proceedings of trial and then states: “The court has authority to deviate from the foregoing order of proceedings when in its discretion it is deemed proper.”
 

 It is urged that counsel for defense were, without authority to make the admission of guilt and plea of guilty as was done. Such contention stresses the unusual situation created. Such admission was not made upon arraignment but during the progress of a jury trial. Such admission of guilt was made in the presence of the defendant and with his apparent consent. There is -nothing in the record to the contrary. Such plea did not take from the jury the determination of the question then being argued. The right to have the question determined by the jury was preserved by the trial court. Under the uncontradicted facts and circumstances, counsel for defense were not admitting anything but what had already been proven by many witnesses and a full and complete confession by the defendant himself.
 

 The defendant also claims that he was not convicted by due process of law. He contends that if statements of his counsel changed the plea from not guilty to guilty “then the jury should have been discharged and two other judges called in to sit on the case and
 
 *413
 
 determine the degree of guilt and fix the penalty as provided in Ohio General Code Section 13442-5.” In answer to such claim, let it be said that the defendant had the benefit of a jury trial then nearing a close. The confession of guilt in open court was first made to the jury, presumably to influence it on the question of mercy. The court did not interfere with the determination of that question by the jury hut provided appropriate forms of. verdict therefor. In respect to the plea of guilty the trial court went no further than defendant and his counsel. Counsel for defense did not state and it does not appear that the formal admission of guilt or plea of guilty was being made for the purpose of having the issues tried by a court of three judges as provided by statute. On the contrary, such plea was made “for the purpose of the record” as an admission of the truth, and counsel thereafter continued with argument to the jury. As revealed by the argument, such admission was made in order that the jury would not have to pass upon the question of guilt. Counsel for- defendant said to the jury, “You do not have to pass upon that question * * *.” There was neither waiver of nor objection to the jury trial then in progress. The accused and his counsel may not go on with a trial, taking chances with the verdict, and, failing of success, ask a new trial on a ground that should have been presented by an objection during the progress of the trial.
 
 Wolff
 
 v. Commonwealth, 211 Ky., 62, 276 S. W., 1067.
 

 Another question propounded by the defendant in his brief is: “Did these statements justify the court in directing a verdict of guilty?” That question contains an implication not justified by the record. The trial court did not direct a verdict in the instant case. After counsel for defendant in the presence of the defendant entered a plea of guilty to murder in the first degree for the purpose of the record, the trial
 
 *414
 
 court submitted to the jury the only possible question left in the trial by the action of the defense in making such plea of guilty for the purpose of the record. The trial court did not direct the jury to return any particular kind of verdict. The only thing the court did was to refrain from giving to the jury a “not guilty” form of verdict, the necessity for which, under the unusual circumstances of the case, was negatived by the plea of guilty during trial in open court. The only question left for decision by the action of the defendant in making such plea, a possible recommendation of mercy, was left to the jury by the court and requisite forms of verdict provided.
 

 It is also urged that a form of verdict for manslaughter should have been given to the jury. Under the indictment and facts of the instant case no instruction on any lesser grade of homicide than murder in the first degree was requisite or proper. Hence, no form of verdict on any lesser grade of homicide was required. Section 12400, General Code.
 
 Bandy
 
 v.
 
 State,
 
 102 Ohio St., 384, 131 N. E., 499, and
 
 Malone
 
 v.
 
 State,
 
 130 Ohio St., 443, 200 N. E., 473.
 

 The right of trial by jury is guaranteed by the Constitution. So also is the right to .an impartial jury. Such rights should be sedulously guarded by the courts. But the full guarantee of such rights does not prohibit the defendant during the progress of a jury trial, from making admission of previously proven circumstances and facts in the hope of obtaining from the jury a recommendation of mercy. That right was not taken from the defendant in the instant case. Whatever variance there was in'not submitting a “not guilty” form of verdict was due to the plea of guilty for the purpose of the record and repeated references thereto by counsel for defense.
 

 Under all the circumstances of the case it does not affirmatively appear that the defendant was deprived
 
 *415
 
 of any substantial right under the Constitution or convicted without due process of law. Where an irregularity does not materially affect a substantial right of the defendant, the verdict will not be set aside. That principle has been declared many times by this court and is at present a mandatory provision of our Code of Criminal Procedure. Section 13449-5, General Code, provides in part as follows:
 

 “No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court * # * for any misdirection of the jury unless the accused was or may have been prejudiced thereby; nor for any other cause whatsoever unless it shall affirmatively appear from the record that the accused was prejudiced thereby* or was prevented from having a fair trial.”
 

 The defendant had the benefit of able and conscientious counsel and a fair trial by an impartial jury. Upon a careful examination of the record we find no error prejudicial to the rights of the defendant in respect to the foregoing or other errors assigned. Wherefore, the judgment is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Matthias, Day, Zimmerman, Williams and Gorman, JJ., concur.