THE STATE OF OHIO, APPELLEE, *v.* LOWDER, APPELLANT.
THE STATE OF OHIO, APPELLEE, *v.* HALEY, APPELLANT.
THE STATE OF OHIO, APPELLEE, *v.* PARKS, APPELLANT.

(Nos. 2232, 2233 and 2234—Decided October 9, 1946.)

*Mr. D. Deane McLaughlin,* prosecuting attorney, *Mr. W. Bernard Rodgers* and *Mr. John Rossetti,* for appellee.

*Mr. W. M. Howard* and *Mr. C. E. Hunter,* for appellants Willie Lowder and Alfred Parks.

*Messrs. Amerman, Mills, Mills, Jones & Mansfield,* for appellant John Harvey Haley.

MONTGOMERY, J. The three appellants were, by separate indictments, charged with the killing of one

William Koram, while attempting to perpetrate a robbery, under the provisions of Section 12400, General Code. Lowder and Haley were tried before juries. Parks, waiving that right, was tried before three judges. Each of the accused was convicted of murder in the first degree, with recommendation of mercy, and sentenced accordingly. From the several judgments, these three appeals were perfected.

Not the least of our tasks has been the reading of the three records, two of which were voluminous. They have been read, and read with care, because of the necessity of having in our minds the facts proven in each case, and the danger of confusion lest an essential matter appear in one case, and perhaps not in another.

Except for the nature of the cases and their importance, we might well content ourselves with, and adopt as our own, the opinion rendered by Judge Barthelmeh in the Parks case, and the opinion of Judge Sweitzer in overruling the motions for new trials in the three cases.

There are numerous assignments of error in each case. While in the several cases they vary in form and in language, they are in substance essentially the same, and may be considered and discussed together, and all have been considered. Some of them have no merit in them, and some but repeat in different form the basic matters of which complaint is made.

Especially in the Haley case, and to a lesser extent in the other cases, much is made of the complaint of misconduct on the part of counsel representing the prosecution. Some of the criticized statements of counsel were provoked or produced by preceding statements of counsel for defense. But in none of the proffered charges against counsel do we find anything prejudicial, or in fact anything deserving criticism.

If the *corpus delicti* was proven in each case, and if

the several confessions were admitted in evidence properly, the verdicts in the two cases, and the finding in the third case, were not manifestly against the weight of the evidence.

And assuming for the moment that we should hold for the state on these two propositions, there was nothing erroneous in the charges given to the jury in the two cases. There is no requirement that the trial judge shall give special requests to the jury in a criminal case. In these cases, in view of the evidence, he properly declined to charge on other offenses.

See *Malone* v. *State,* 130 Ohio St., 443, 200 N. E., 473.

We have, therefore, in each of these cases, essentially two questions to consider:

1. Was there in each of them, independent of the admitted confession, adequate proof of the crime, of the *corpus delicti?*

2. Were the confessions, obtained as they were, admissible in evidence?

The defendants Lowder and Haley in their several trials testified in their own behalf. The defendant Parks testified only as to the circumstances surrounding his confession. But police officers testified as to his verbal admissions. We endeavor to indicate in each case anything that may be lacking in the chain of evidence. To a considerable extent the proof of the *corpus delicti* is circumstantial. But, as has been aptly stated, "circumstances do not lie."

Here is the chain: These three minor boys together on the eve of the crime discussed the possibility of easy money, and what could be done with a gun. They went to the home of Haley who produced the gun. It was loaded and had a safety device.

These boys roamed about the streets of Canton until nearly midnight, when coming before the business

place of Koram, they concluded on trying it as the place for their operations. During their peregrinations, the gun was transferred from Haley to one of the other appellants. And here is a strange divergence in statements. While there is a similarity in other respects in the confessions and in the oral evidence at the trials of the defendants Lowder and Parks, each places the gun in the possession of the other at the time of the shooting.

Lowder and Parks entered the Koram room. Haley remained on the outside as a "look-out." He did not know and could not know what happened in the room. He heard a shot and ran, later meeting the other two boys.

The two entered the room, announced to Koram, who was then alone, that it was a "stick-up." He, not yielding, started toward them. He was shot. The bullet traveled in an apparently straight line and entered into the apex of the heart. Blood spots were found four or five feet back from the doors from which the accused fled.

The bullet was later taken from the body of Koram. The cartridge shell was found in the storeroom near the door. After various false statements as to the whereabouts of the gun, it was found ultimately where the accused Parks stated it would be found. It was buried in a brickyard, in a canvas bag, which bag he told the officers had been stolen in a previous burglary of The Felber Biscuit Company, perpetrated by these same three appellants.

The connection is complete. There is no fatal break in the chain of circumstances. And in each case the ballistic expert, the F. B. I. man in Washington, to whom went the gun, the shell, and the bullet, was clear in his conclusions. We see no occasion for questioning

them. He said this "bullet was fired from this gun."

We find no difficulty in holding adequate the proof of the "body of the crime."

As to the contention that, at the time of the killing, the intention to rob had been abandoned, and that if any offense were committed, it was a lesser one, we suggest that the case of *Conrad* v. *State*, 75 Ohio St., 52, 78 N. E., 957, 6 L. R. A. (N. S.), 1154, still is applicable.

Coming now to the confessions: In the Lowder and Haley cases it is claimed they were obtained by duress, and in the Parks case by promises. In his case he admits no force was used. From a study of these records we are unable to uphold either contention. In the Lowder and Haley cases, this question of the voluntary nature of the confessions was submitted to the jury, which in each case found against the accused. We are in accord with these findings.

It is urged that these confessions were not admissible in the trials in the Common Pleas Court because previously they had been used in the Juvenile Court to which these three minors had first been taken. Section 1639-30, General Code, which is a portion of the "Juvenile Court Code," provides in part:

"The disposition of a child under the judgment rendered or any evidence given in the court shall not be admissible as evidence against the child in any other case or proceeding in any other court * * *."

But here there was no judgment other than the referral after hearing the evidence, and realizing the nature of the crime charged, to the Court of Common Pleas, as was the only possible course. That did not make of it "any other case or proceeding in any other court." It was the same case, the same proceeding, transferred to the proper court.

Finally, we come to the contention that these confessions were inadmissible, because the accused minors were not taken "immediately" before the Juvenile Court as directed by Section 1639-27, General Code, and because these confessions were obtained before defendants were taken before the court.

This contention is the most serious one presented to us and has given us much concern. The perplexity is due to recent decisions of the Supreme Court of the United States, which decisions were discussed at length in briefs and arguments of counsel. They are confusing, because of the conflicting positions taken by various justices, because of the varying concurrences and dissents, but the fact remains that so far as the decisions are in point, they deal with federal and not state statutes.

We are content to follow the reasoning and the conclusion of the Second Appellate District of Ohio as pronounced in the case of *State* v. *Collett,* unofficially reported in 44 Ohio Law Abs., 225, 58 N. E. (2d), 417, and this is so in spite of 'the difference in wording of the statutes involved in that case and ours.

In the case of *Sharkey* v. *State,* 4 C. C., 101, 2 C. D., 443, decided in 1888, with Judge Shauck, then on the circuit bench, rendering the opinion, it was held that a confession, voluntarily made, although before a warrant had been issued for the arrest of the accused, was admissible in evidence.

See the case of *People* v. *Alex,* 265 N. Y., 192, 192 N. E., 289, 94 A. L. R., 1033, and the annotations following it. The first branch of the headnotes in that case (as set forth in 94 A. L. R., 1033) is:

"Illegal delay in arraignment after arrest, for the purpose of obtaining a confession, does not of itself render the confession inadmissible."

This certainly is sound. One restrained of his lib-

erty has a right to strict compliance with the laws under which he is detained, but if he voluntarily makes a confession before such compliance is had, we fail to see how he is prejudiced by his own confession.

In the instant cases the guilt of these several appellants is so apparent, the care taken by the trial courts to protect them is so outstanding, the technical errors should be disregarded, and there are no prejudicial errors. Justice was done and the judgments of conviction are affirmed.

*Judgments affirmed.*

SHERICK, P. J., and PUTNAM, J., concur.