Tapt, J.
Section 12400, General Code, reads:
“ Whoever, purposely, and either of deliberate and premeditated malice, or by means of poison, or in perpetrating or attempting to perpetrate rape, arson, robbery or burglary, hills another is guilty of murder in the first degree and shall be punished by death unless the jury trying the accused recommend mercy, in *216 which case the punishment shall be imprisonment in the penitentiary during life.” (Italics supplied.)
The principal contention of defendant is that no attempt to perpetrate a robbery was shown. In a confession which he repudiated, defendant admitted that he intended to rob Stayner. He contends however that, apart from this evidence of such intent, there is no evidence of any act amounting to an attempt to rob.
As stated by McIlvaine, J., in the opinion in Fox v. State, 34 Ohio St., 377, at page 379:
“It is quite clear that in an ‘attempt’ to commit an offense an'‘intent’ to commit it must be present; and it is equally clear that the presence of intent alone is not sufficient. There must be some concomitant act or movement toward the execution of the purpose. ’ ’
As pointed out in the opinion in that case, the act necessary in an attempt to commit a felony need not be the last proximate act prior to the consummation of the felony intended to be perpetrated. In that case it was held that an attempt to commit rape might exist even without an assault. It appears obvious that, under Section 12400, General Code, an attempt to perpetrate robbery might exist where there has been an assault with intent to rob. See State v. Curtis, 149 Ohio St., 153, 155, 78 N. E. (2d), 46.
In the instant case, the defendant testified that he went to Stayner’s home at night to procure from him two tires, that Stayner procured two tires for him, and that the defendant then struck Stayner twice in the course of an altercation between them, which arose when the defendant requested Stayner to give him the tires on payment of only $1.50 of the $4.00 that Stayner wanted for the tires and to allow him to pay the remaining $2.50 later. In our opinion, this testimony and the statement in one of defendant’s confes *217 sions of Ms intent to rob Stayner at that time were sufficient to justify the triers of the facts in determining beyond a reasonable doubt that the action of the defendant at the time of this altercation was action taken to carry out that intent and therefore amounted to an attempt to perpetrate robbery.
The defendant contends further that, apart from confessions which he repudiated, the state did not offer sufficient evidence to establish the corpus delicti. Apparently, the theory of the defendant is that an attempt to perpetrate robbery is the corpus delicti of the crime for which he has been convicted. Assuming, without deciding, that such theory is correct, we do not believe that the case of State v. Maranda, 94 Ohio St., 364, 114 N. E., 1038, relied upon by the defendant to sustain this contention, does sustain his position. That case decided that it was only necessary to have “some evidence outside of the confession that tends to prove some material element of the crime charged.' ’ As stated in the first paragraph of the syllabus, “by the corpus delicti of a crime is meant the body or substance of the crime, included in which are usually two elements: 1. The act. 2. The criminal agency of the act.” The two material elements of an attempt to perpetrate robbery are (1) an act in carrying out (2) an intention to rob. Although there was no evidence of such intention apart from the defendant’s confession, there was certainly evidence of an act by the defendant in carrying out the intention indicated by Ms confession.
The most serious question raised by the defendant is whether there was evidence which justified the triers of the facts in determining, beyond a reasonable doubt, that the defendant intended to kill Stayner.
During the course of the trial the following stipulation was entered into between counsel for the state and counsel for the defendant:
*218 “Defendant admits that on the night of November 28, 1949, he struck Oliver E. Stayner two blows on the head with a stick and that the said Oliver E. Stayner died as a result of said blows on December 1, 1949.”
In Robbins v. State, 8 Ohio St., 131, this court held that, under the statute then in force, an intent or purpose to kill was an essential element of the crime of first degree murder even where the killing was “by administering poison. ’ ’
As pointed out in the opinion in the Robbins case at page 168, “ purpose or intent to kill does not constitute an essential ingredient in the crime of murder by the common law.” Likewise, such purpose or intent is not an essential element of the crime of first degree murder under most statutes. 26 American Jurisprudence, 183, Section 39.
A reading of the dissenting opinion by Swan, J., in the Robbins case indicates that he and the other dissenting judge were influenced in their conclusion by these common-law precedents.
The decision in the Robbins case construed the language of a statute which the opinion in that case (page 175) indicates as reading in part as follows:
“That if any person shall purposely, and of deliberate and premeditated malice, or in the perpetration, or attempt to perpetrate any rape, arson, robbery, or burglary, or by administering poison or causing the same to be done, kill another * *
The opinion in that ease (page 172) indicates the source of that language as “Rev. Stat. of 1854, 269.” We assume that this refers to “Curwen’s Laws of Ohio in Force 1854,” which purports to be “a complete collection and revision of all the laws of Ohio, in force on the first day January 1854. ’ ’ It may be noted that the quoted section of the statute is found beginning at page 361 of that work.
*219 As appears from the foregoing revision of the laws, that section was enacted as a part of “ an act providing for the punishment of crimes. Passed March 7,1835.” That section of the act is found in 33 Ohio Laws, 33.
A comparison of that section of the statute as quoted in the Robbins case (page 175) with the section as set forth in “Curwen’s Laws of Ohio in Force 1854” and with the section as set forth in 33 Ohio Laws, 33, discloses that each of the two of these reproductions of the section, which succeeded that found in 33 Ohio Laws, added commas to the section. Most of the additional commas are of no significance hut the addition of one of these commas undoubtedly led to the decision reached by the majority in the Robbins case. Certainly, a reading of the majority opinion at pages 175 and 176 clearly indicates that the majority placed great stress on the existence of a comma after the word “purposely,” as requiring the decision which the majority reached instead of the decision which the minority favored.
Thus, it is said in that opinion at page 175: “The word ‘purposely’ is, by the authoritative punctuation of the statute, in a clause of the sentence distinct from that which makes ‘deliberate and premeditated malice’ a distinguishing feature in the first class of homicide mentioned.”
Again, on page 176 it is said: “To have expressed fully, in words, the meaning of the sentence under consideration, the word either should have been used, either before the word ‘purposely,’ or before the words ‘o/ deliberate and premeditated malice;’ if the former, the sentence would read, ‘That if any person shall, either purposely and of deliberate and premeditated malice, or in the perpetration, ’ etc.; if the latter, it would have read, ‘That if any person shall purposely, and either of deliberate and premeditated malice, or *220 in the perpetration,’ etc. That the word either is to be understood, by implication, in one or the other of these two places, in the structure of the sentence, is undeniable. ’ ’
From the foregoing it is apparent that, if the court in the Robbins case had had before it the statutory section as set forth in 33 Ohio Laws instead of the section as set forth in Curwen’s Laws of Ohio in Force 1854, the majority would probably have reached the same conclusion as did the minority judges.
In the Revised Statutes of 1880 the language of this section was changed to read as the majority opinion in the Robbins case had stated that it should have read ‘ ‘ to have expressed fully, in words, the meaning of the sentence under consideration. ’ ’ This was done by the insertion of the word “either” where the majority opinion in the Robbins case indicated that it should be implied in order to justify the conclusion reached in that opinion. Thus the section was changed to read as follows:
“Whoever purposely, and either of deliberate and premeditated malice, or by means of poison, or in perpetrating, or attempting to perpetrate, any rape, arson, robbery, or burglary, kills another * *
In 1898 this section of the Revised Statutes (Section 6808) was amended to provide among other things for a recommendation of mercy by the jury. However, the foregoing-quoted language defining the crime of first degree murder was not changed.
A comparison of this language with the language of Section 12400, General Code, quoted at the beginning of this opinion, discloses that the General Code of 1910 made no substantial change in the language, defining the crime of first degree murder under this section, as it had been adopted by the General Assembly in 1898.
*221 In Ohio, all crimes and degrees of crimes are fixed and defined by statute. Because Section 12400, General Code, in specifying the elements of first degree murder, uses the words “whoever, purposely, and either of deliberate and premeditated malice, or by means of poison, or in perpetrating or attempting to perpetrate rape, arson, robbery or burglary, kills another,” it appears clear that an essential element of that crime under that statute is a purpose or intent to kill even where the killing is “by means of poison, or in perpetrating or attempting to perpetrate rape, arson, robbery or burglary.”
The Robbins case was decided by this court in 1857. We do not have merely a situation where the Legislature has acquiesced for a period of almost 95 years in the interpretation of statutory language made by this court in the Robbins case, but we have a situation where, 23 years after the decision in the Robbins case, the General Assembly, in the Revised Statutes of 1880, added to the language of the section those words which the majority of the court in the Robbins case had stated were necessary to fully express in words the meaning which that majority found the section had. Thereafter, the General Assembly, in re-enacting the section in 1898, used the same language that it had so used in 1880, and it used substantially the same language again in enacting the codification of 1910. Therefore, whether the Robbins case was rightly or wrongly decided, it is clear that the General Assembly has, by its revisions and re-enactments of this section, expressed an intention that it should be construed as the majority opinion in the Robbins case did construe it, so as to require a purpose or intent to kill as an essential element of the crime of first degree murder, even where the killing is “by means of poison, or in perpetrating or attempting to perpetrate rape, arson, robbery, or burglary.”
*222 We have gone at length into this analysis of the history and origin of the language now found in Section 12400, General Code, because of the doubts heretofore indicated by some of the members of this court as to the soundness of the decision in the Robbins case. See State v. Turk, 129 Ohio St., 245, 194 N. E., 453; State v. Salter, 149 Ohio St., 264, 78 N. E. (2d), 575. Cf. Malone v. State, 130 Ohio St., 443, 448, 200 N. E., 473, 476. We believe that this analysis shows that, even if the Robbins case was decided incorrectly, the language of the statute as it now exists and its legislative history require a holding that- the General Assembly clearly intended that an essential element of the crime of first degree murder under that statute should be an intention to kill, even where the killing was by means of poison or in perpetrating or attempting to perpetrate rape, arson, robbery or burglary. Since the General Assembly has so clearly and repeatedly expressed that intention, we believe that, if an intent to kill is not to be required in such an instance, the General Assembly and not this court should amend the statute to eliminate that requirement.
In order to establish that the defendant intended to kill, the state relied upon circumstantial evidence.
The evidence showed that, after he had been struck by the second blow of the stick, Stayner fell to the ground, that he was unconscious when found shortly thereafter, and that he died three days later as a result of the two blows.
If the use of a weapon, likely to produce death or serious bodily harm, results in death, such use, in the absence of circumstances of explanation or mitigation, may justify a determination beyond a reasonable doubt that there was an intent to kill. On the other hand, if the instrument so employed is one not likely to produce death or serious bodily harm, such determination *223 will not be justified without some other evidence. See 26 American Jurisprudence, 361, Section 305. In other words, though one may be presumed to intend results which are the natural, reasonable and probable consequences of his voluntary act, such one may not be presumed to intend results which are not the natural, reasonable or probable consequences of such act. See Jones v. State, 51 Ohio St., 331, 334, 38 N. E., 79; Ridenour v. State, 38 Ohio St., 272; State v. Huffman, 131 Ohio St., 27, 40, 41, 1 N. E. (2d), 313; 20 American Jurisprudence, 228, Section 232; annotations at 15 A. L. R., 675, and 24 A. L. R., 666.
The stick with which the defendant hit Stayner was never found. What little evidence there was tending to describe it was hardly sufficient to justify the triers of the facts in determining beyond a reasonable doubt that the stick was a weapon likely to produce death or serious bodily harm. Even in the absence of evidence as to the size and character of the stick, evidence as to the nature of the injuries received by Stayner might have justified such a determination. Here again, however, the evidence offered was such that it should have left a reasonable doubt in the minds of the triers of the facts as to whether the weapon used was one likely to produce death or serious bodily harm. What evidence there was, as to the nature of the injury to Stayner when he was found unconscious and when he was taken to the hospital, was not such as to justify a determination beyond a reasonable doubt that he had been struck by a weapon likely to produce death or serious bodily injury. That evidence would have just as readily justified a determination that he had been struck by a blow from someone’s fist or from some weapon not ordinarily likely to produce death or serious bodily injury.
In affirming the judgment, the Court of Appeals re *224 lied upon the testimony of the undertaker, as to what he found in the way of injuries to Stayner, to justify the conclusion “that it would take a considerable blow with some instrument, weightier than a small stick, to produce” those injuries. The undertaker testified that, when he came for Stayner’s body, he found the skull fractured and shattered in small pieces above the temple on the left side of the head over the left ear. Evidence as to such an injury might have justified the conclusion reached by the Court of Appeals if there had been evidence to indicate that such injury existed at the time or shortly after the time that Stayner was struck by the defendant. However, the undertaker, when questioned as to whether he found this fracture existing when he opened the scalp, answered that “it was already opened at the time when we picked the body up at Dayton. ’ ’ The undertaker had testified that on the night of the injury he had taken Stayner from his home to the Portsmouth Hospital in an ambulance and that he had picked up Stayner’s body in Dayton at the Veteran’s Hospital three oi four days later. No evidence was offered by the state as to the nature of the injuries to the decedent when he arrived at the Portsmouth Hospital. Although the testimony of the undertaker indicated that there had been some operative treatment on Stayner prior to the time he picked up the body, no evidence was offered by the state to show that no operative treatment received by Stayner at either the Portsmouth Hospital or the Dayton Hospital caused any part of the injuries which were apparent to the undertaker when he picked up the body. If part of the injuries found by the undertaker was not so caused, such evidence could have been readily offered by the state. Not only does its absence raise some doubt as to whether the injuries found on the body by the undertaker were the *225 same as existed when Stayner was taken to the Portsmouth Hospital, hut the failure of the state, to produce such evidence when it should have been readily available or explain why it was not produced, tends to increase that doubt.
The rule of law applicable in such a situation is well stated in 20 American Jurisprudence, 188 et seq., Section 183, as follows :
“It is a well-established rule that wliere relevant evidence which would properly be part of a case is within the control of the party whose interest it would naturally bo to produce it, and he fails to do so, without satisfactory explanation, the jury may draw an inference that such evidence would be unfavorable to him. This rule is uniformly applied by the courts and is an integral part of our jurisprudence. If weaker and less satisfactory evidence is given and relied on in support of a fact when it is apparent to the court and jury that proof of a more direct and explicit character is within the power of the party, it may be presumed that the better evidence, if given, will be unfavorable to him. The principle is applicable to criminal eases as well as to civil cases, although it must be applied with due regard to the constitutional rights of an accused so far as regards his own testimony. ’ ’
An example of the application of this rule of law by this court appears in Mitchell v. Ryan, 3 Ohio St., 377, 384, 385.
As pointed out on pages 243 and 244 in the court’s opinion by Hart, J., in State v. Porello, 138 Ohio St., 239, 34 N. E. (2d), 198, a reviewing court may, under Section 13459-6, General Code, and Section 13449-1, General Code, modify a verdict of guilty of first degree murder by changing it to a verdict of guilty of manslaughter “without granting or ordering a new trial.” It should be observed that the statute (Section *226 13449-1, General Code) uses the words “may modify the verdict.” The reviewing court is not required by the statutory language to do so but instead may grant or order a new trial.
If the reviewing court does not so modify the verdict, but instead orders a new trial which the defendant has requested, the defendant may then be retried upon the same issues as at the first trial. State v. Behimer, 20 Ohio St., 572.
If a new trial is ordered, then, with leave of court on good cause shown in open court, the prosecuting attorney may enter a nolle prosequi in the instant case so far as the indictment relates to the intent to kill. See Section 13437-32, General Code; Baker v. State, 12 Ohio St., 214. Thereafter, the defendant may still be convicted of manslaughter under that indictment. See Baker v. State, supra.
The evidence offered in the trial would have clearly justified the triers of the facts in rendering a verdict of guilty of manslaughter. If the state cannot establish the intention to kill by evidence, in addition to that offered at the trial, then a reversal of this conviction would simply involve the state and the defendant in the additional expense of a new trial which would undoubtedly result in his conviction for the crime of manslaughter. In the event that the prosecuting attorney believes that a nolle prosequi should be entered, so far as the indictment relates to the intent to kill, because the state cannot offer sufficient evidence of an intent to kill in addition to that offered at the prior trial of this case, it would thus appear to be unwise for this court to order a new trial instead of modifying the verdict to one of manslaughter.
In my opinion, a reasonable solution of the problem thus presented in the instant case would be for this court to condition its modification of the verdict from *227 one of first degree murder to one of manslaughter, on the proper entry within a specified time of a nolle prosequi of the indictment, so far as it relates to an intent to kill, and order a new trial in the event no such nolle prosequi is entered within such specified time.
However, since a majority of the members of the court do not favor that solution, the judgment of the Court of Appeals is reversed and the cause is remanded to the Common Pleas Court for a new trial.

Judgment reversed.

Middleton, Matthias and Hart, J'J., concur.
Zimmerman and Stewart, JJ., concur in paragraphs two, three and four of the syllabus and in the judgment.