Matthias, J.
There are but two assignments of error in the appeal to the Court of Appeals and in the appeal to this court which require our consideration. It is contended in the first assignment of error that “the trial court erred in refusing to include in its charge to the jury the grades of homicide less than first degree murder, as charged in the indictment, when evidence to warrant a charge of the lesser degrees of homicide was present.”
The indictment was brought under that portion of Section 12400, General Code, which reads as follows:
“Whoever, purposely, and either of deliberate and premeditated malice, or by means of poison, or in perpetrating or attempting to perpetrate rape, arson, robbery or burglary, kills another is guilty of murder in the first degree and shall be punished by death unless the jury trying the accused recommend mercy, in which case the punishment shall be imprisonment in the penitentiary during life. ’ ’
This statute has been considered by this court in several cases and the rule is established by such authority that where an indictment charges a defendant with murder in the commission of a felony and no other degree of homicide is charged and the evidence tends to prove no lesser offense, no instructions should be given to the jury concerning murder in the second degree or manslaughter. However, where there is evidence to support a lesser charge the defendant may rightfully be convicted of the lesser offense and the court would be justified in so instructing the jury. See 21 Ohio Jurisprudence, 51, Section 14.
This rule is stated in Section 13448-2, General Code, which provides in part as follows:
‘ ‘ The jury may find the defendant not guilty of the offense charged, but guilty of an attempt to commit it if such attempt is an offense at law. When the indictment or information charges an offense, including dif *279 ferent degrees, or if other offenses are included within the offense charged, the jury may find the defendant not guilty of the degree charged but guilty of an inferior degree thereof or lesser included offense.”
In the case of Bandy v. State, 102 Ohio St., 384, 131 N. E., 499, 21 A. L. R., 594, this court, in an extended opinion, interpreted the statute under consideration, and the applicable rule is clearly set forth in the syllabus which is as follows:
“1. Murder in the first degree, literally considered, necessarily includes murder in the second degree and manslaughter. Whether in an indictment for murder in the first degree in the perpetration of a robbery, a charge is warranted as to murder in the second degree, or manslaughter, depends, however, not merely upon whether or not these are literally included in the formal charge, but upon whether or not there is any evidence tending to support a charge of murder in the second degree, or manslaughter.
“2. If the indictment charges murder in the first degree in the perpetration of a robbery, under Section 12400, General Code, and there is no evidence tending to support a charge of murder in the second degree, or manslaughter, as distinguished from murder in the first degree, then the defendant, upon the failure of proof as to murder in the first degree, is entitled to an acquittal, and, in such case, it is not error for the court to refuse to charge either murder in the second degree or manslaughter.”
To the same effect see Malone v. State, 130 Ohio St., 443, 200 N. E., 473, and State v. Farmer, 156 Ohio St., 214, 102 N. E. (2d), 11.
In the Farmer case, supra, previous decisions of this court were reviewed beginning with the case of Robbins v. State, 8 Ohio St., 131, and the rule therein established that an essential element of the crime of first degree murder is an intention to kill, even where *280 the killing occurs in the perpetration of the named felonies, is restated in paragraph one of the syllabus, which is as follows:
“Under Section 12400, General Code, an essential element of the crime of first degree murder is an intention to kill, even where the killing is ‘by means of poison or in perpetrating or attempting to perpetrate rape, arson, robbery or burglary.’ ”
In view of this well established rule, was the Court of Appeals correct when it found that there was no evidence tending to support a charge of murder in the second degree or manslaughter? The determination of that question requires a brief summary of the evidence adduced in the trial.
The record discloses that the defendant and Sandra Lee Kingsley came to Canton, Ohio, on or about December 1, 1950, and checked in at the Milner Hotel as man and wife under an assumed name. The defendant and Sandra Lee Kingsley had been living together under various assumed names in Cleveland and Akron prior to coming to Canton. For some time it had been her practice to go into and about barrooms, pick up men and take them to her rooms for the purpose of prostitution, the revenue from which she shared with the defendant.
The record discloses further that on the afternoon of December 2, 1950, she met the decedent, George Le-Masters, in a barroom and later took him to her room in the Milner Hotel for the purpose of prostitution. The decedent procured some beer and sandwiches which were taken to her room. About 20 minutes later the defendant entered the room and found the decedent and Sandra Lee Kingsley partially disrobed. In his confession the defendant stated that he demanded money of the decedent which was refused, but he refuted that statement in his testimony at the trial. Some quarreling ensued and thereafter more beer was pro *281 cured for which the decedent furnished the money. Thereafter the controversy was renewed during which the decedent attempted to strike the defendant with a beer bottle. There is evidence of two attempted assaults on the defendant by LeMasters. The woman left the room and in the continued struggle the decedent was badly beaten by blows of defendant’s fists, and later it was found that decedent had died from strangulation, either by his necktie or a scarf which was about his neck. The record shows that the three persons were in the room for a period of more than two hours, and that the controversy continued practically all that time.
It is disclosed that the defendant and Sandra Lee Kingsley took 40 dollars and a watch belonging to the decedent, left the hotel separately, met at a nearby bar, and thence took a train to Pittsburgh. They were later apprehended in Cleveland. Though jointly indicted they were tried separately.
Both testified fully upon the trial of the defendant and their story of what took place in the hotel room is the only evidence in relation thereto.
There is evidence in the record from which the jury might conclude that there was not an intentional killing of LeMasters or that he was not killed in the perpetration of robbery, and it was therefore error prejudicial to the defendant to refuse to instruct the jury as to lesser offenses.
The defendant contends in this court, as he did in the Court of Appeals, that error prejudicial to him resulted from the intemperate and abusive statements of the prosecuting attorney in the closing argument and, particularly, the denunciation of the use of the money of the jurors and other taxpayers to try the defendant and his companion. The following excerpts are illustrative of the prejudicial character of the argument of the prosecuting attorney:
*282 “You know, ladies and gentlemen, I have tried enough of these murder cases to tell you this. Any time that a defendant doesn’t have anything to talk about, what do they do? They pick on me, the prosecutor. They pick on the police department, and yes, in the past they have picked on his Honor, Judge McLaughlin, as a prosecutor.
í Í * * $
“Believe you me, any time this man here is fighting for his very life, he is going to use every means at his disposal to tell you anything that is going to becloud the issues, and if you people are going to fall for the stories that he and Sandra Kingsley have told, then I just feel sorry for every one of you. If for a moment I thought that you twelve or thirteen people — -twelve people eventually it will be — would allow this man to walk out of this courtroom free, then I am disappointed in society. Then we might as well close up shop and quit, because there hasn’t been one lawyer in this case representing Muskus that has asked this jury to acquit him — has there been? There hasn’t been one tell this jury to find him not guilty. Am I right?
‘ ‘ The only thing that they are asking for, ladies and gentlemen, is mercy. So we are all in agreement on that — the lawyers anyhow — guilty.
Í 6 * * #
“Where is the mercy that you extended to George LeMasters? Yes, what about that, Mr. Muskus? Where is the mercy? I suppose that the three times that you beat up those fellows in Kankakee — you did the same thing to this poor George LeMasters that is under the ground now. Brave coward — pimp—it makes me boil. Makes me boil to know that we have to waste the Stark county taxpayers’ money to try a fellow like that — got to waste your money and your money and your money and everybody else’s, for a couple of people like these.
*283 “Now, are yon going to be soft-hearted and say, ‘We are not going to send yon to the electric chair. We will sentence yon to life, so perhaps one of these days, in twenty years, yon can get ont.’ We don’t want him ont, and neither do yon. We want him to go,exactly where he sent George LeMasters, and I don’t make any bones about, ladies and gentlemen.
(( * # *
“You people shouldn’t waste much time with this defendant. I am not asking you, ladies and gentlemen, to return a verdict. I am demanding it. Oh, I don’t know, maybe yon might call me cruel, but I have the responsibility in this county to see that these people are put where they belong. What kind of prosecutor would yon think I would be if I didn’t ask for the same medicine that he meted ont, so let’s send him there.
‘ ‘ Oh, look at the money it is costing this county for two transient bums who came in this town to try to take some easy money. Are yon going to stand for it? Yon can say what yon want, ladies and gentlemen. How often have yon heard people say, ‘We will let the other fellow do it. I don’t want to have any part of it.’ Well, ladies and gentlemen, let’s not get into that frame of mind, where yon don’t want to do your duty.
“Yon and I are interested in law enforcement. Yon and I are interested in seeing that we have a community in which our children can be raised and proud of. You and I are interested in knowing that there isn’t going to be any of these low-down pimps coming into our town and trying to take some poor devil for some money, and then perhaps in a day or two leave and go to another city. I am wondering how many times or how many towns they have been in. Lord only knows.
(Í * # #
“Well, I am going to make an appeal to yon my *284 self, ladies and gentlemen. We are going to hold you to what you promised to do. I am not going to talk any more about whether the man is guilty, because I think his own lawyers are convinced he is guilty.
“Mr. Ross: Object to that
“The Court: Overruled. Mr. Ross.
“Mr. Rosetti: If they had any thought in their minds ....
“Mr. Ross: Object again.
“The Court: Overruled. Proceed, Mr. Rossetti.
É i # * #
“Mr. Rossetti: * * * Do you want the state of Ohio to support this man for the rest of his life in the penitentiary? Do you want to take the chance he is going to get out in twenty to twenty-five years?”
Repeated objections to the argument were made by counsel for the defendant but were overruled by the trial judge with a direction to the prosecuting attorney to “proceed.” There can be little doubt as to the prejudicial effect of such argument upon the minds of the jurors, particularly where, as here, tacit approval thereof was accorded by the trial judge, which would serve most effectively to prevent consideration of the element of mercy unimpaired by prejudice, to which any defendant charged with such crime is entitled.
The argument of counsel for the defendant was a fervent plea for mercy. In that argument there will be found no justification for the grossly improper statements of the prosecuting attorney.
The overruling of the objection thereto, which carried the court’s implied approval of the argument, was error prejudicial to the rights of the defendant. We approve and adopt the statement of Judge Spear, in his opinion in Miller v. State, 73 Ohio St., 195, 76 N. E., 823, which is as follows:
“This court has uniformly refused to set aside judgments of conviction except in cases where the grounds *285 of error were clear and the error manifestly prejudicial. The court is fully aware of the inconvenience and necessary expense incident to another trial of this case, but these considerations lose force where it appears that the accused has not had such a trial as the Constitution guarantees to him and which it is the duty of the trial court to accord.”
For the reasons assigned, the judgment of the Court of Appeals is reversed and the cause is remanded to the Court of Common Pleas for further proceedings according to law.

Judgment reversed.

Stewart, Middleton, Taft and Hart, JJ., concur.
Weygandt, C. J., and Zimmerman, J., concur in the syllabus and in the judgment of reversal on the one ground of error in the refusal of the trial court to sustain the defendant’s objections to the argument of the prosecuting attorney.